*In the United States District Court*
*for the Northern District of Illinois*
*Eastern Division*

| | |
|---|---|
| Lisa Lewandowski,<br><br>    plaintiff,<br><br>– v –<br><br>Columbia College Chicago, an Illinois not-for-profit corporation,<br><br>    defendant. | **#09 CV 04949**<br><br>Judge Manning<br><br>Magistrate Judge Kim<br><br>**Jury demanded** |

---

**Memorandum Supporting Plaintiff's Motion for Partial Summary Judgment on Liability on Count I (Sexual Harassment) and on Count VI (FMLA Interference)**

---

# Statement of Facts

## Ms. Lewandowski's supervisor admits to having sexually harassed her

In October 2006, Leonard Lehrer, the Dean of the School of Fine and Performing Arts of defendant Columbia College Chicago, admitted to defendant's sexual-harassment investigator that:

- He had told Lisa Lewandowski (his direct subordinate and plaintiff in this case) that he wanted her to have his children;

- He had told Ms. Lewandowski that he wanted to wake up in her bed;

- He had attempted to hug and kiss Ms. Lewandowski, at which point Ms. Lewandowski pushed him away and said "Let's not and say we did";

- He had told Ms. Lewandowski that he wanted to have an affair with her, that nobody would get hurt, and that nobody would need to know;

- He had given Ms. Lewandowski a poem that referenced waking up in her arms;

- He had told Ms. Lewandowski that he had strong feelings for her and that he had to act upon those feelings; and

- He had told Ms. Lewandowski that he was attracted to her and that she was his type – tall and slender.[1]

Before Dean Lehrer had made these admissions, he had been informed by defendant's sexual-harassment investigator that he was being interviewed as part of defendant's investigation of Ms. Lewandowski's complaint of sexual harassment.[2]

Dean Lehrer, as Ms. Lewandowski's direct supervisor, had the power to fire and/or promote Ms. Lewandowski and to approve and/or deny her a raise.[3]

This investigation of Dean Lehrer's sexual harassment of Ms. Lewandowski arose when Ms. Lewandowski had complained to defendant's Human Resources Department of Dean Lehrer's conduct.[4] Most of the conduct of which Ms. Lewandowski complained had occurred the day or two before her complaint.[5] Ms. Lewandowski knew to complain to Human Resources because of the sexual-harassment training she had received.[6]

**Defendant transfers Ms. Lewandowski to a much worse job**

When Ms. Lewandowski had worked as Dean Lehrer's Assistant, her job involved many important responsibilities, including:

- Supervising graduate students;

- Serving as a liaison to College administration, department chairs and department assistants;

---

[1] Joint Statement at ¶¶1, 2, 8, 9, 15, 17; Plaintiff's Statement at ¶¶2, 3.

[2] Joint Statement at ¶17.

[3] Joint Statement at ¶¶1, 2, 8, 9.

[4] Joint Statement at ¶¶10 - 12.

[5] Joint Statement at ¶12; Plaintiff's Statement at ¶¶2, 3.

[6] Joint Statement at ¶13.

- Assisting chairs and department assistants on college policies and procedures;

- Serving as a liaison to the Office of Academic Initiatives and International Programs;

- Researching and gathering information for reports and projects;

- Facilitating budget preparation and maintenance;

- Facilitating faculty evaluations with department chairs;

- Facilitating school faculty retreats and special events for the Dean's office;

- Assisting in resolving student concerns;

- Processing all check requests, travel reimbursements, stipends, and grade change forms; and

- Prioritizing the Dean's weekly, monthly, and semester schedule.[7]

Also when Ms. Lewandowski had worked as Assistant to the Dean of the School of Fine and Performing Arts, she had served as the "point" person for the Dean's office and was regarded as the major contact with Administration, the Dean, the Associate Dean, all chairs, the Office of Academic Initiatives and International Programs, individual faculty, students, student organizations, major School and College committees, and professional organizations.[8]

Ms. Lewandowski took time off away from the office for several months following the sexual harassment.[9]  During that time, defendant learned that  Ms. Lewandowski

---

[7]     Plaintiff's Statement at ¶7.

[8]     Plaintiff's Statement at ¶8.

[9]     Joint Statement at ¶20.

had filed a Charge of Discrimination with the EEOC and had hired an attorney.[10]

Shortly thereafter, in February 2007, defendant transferred Ms. Lewandowski to the

Assistant Provost's office.[11]  Shortly before that transfer, defendant had given

Ms. Lewandowski a job description for the position of Assistant to the Associate

Provost.[12]

Before that transfer, defendant had told Ms. Lewandowski that Associate Provost

Foley knew why Ms. Lewandowski was being transferred.[13]  On Ms. Lewandowski's first

day in her new position, Associate Provost Foley told Ms. Lewandowski that things had

changed.[14]  Throughout Ms. Lewandowski's time with the Associate Provost's office, the

vast majority of the tasks assigned to her were menial busy-work, such as cleaning files,

creating file folders, scheduling meetings, checking e-mails, and printing documents for

various members of the office.[15]  Oftentimes Ms. Lewandowski was given no

assignments at all and had nothing to do.[16]  Defendant's assignment of menial

busy-work to Ms. Lewandowski and its underutilization of Ms. Lewandowski's skills was

a change for the worse for Ms. Lewandowski from her prior job as Assistant to the Dean

of the School of Fine and Performing Arts, where she had done interesting, meaningful,

---

[10]     Plaintiff's Statement at ¶16.

[11]     Joint Statement at ¶¶23, 24; Plaintiff's Statement at ¶4, 16.

[12]     Plaintiff's Statement at ¶5.

[13]     Plaintiff's Statement at ¶6.

[14]     Plaintiff's Statement at ¶9.

[15]     Plaintiff's Statement at ¶14.

[16]     Id.

and responsible work.[17]

On Ms. Lewandowski's first day in her new position, Associate Provost Foley also told Ms. Lewandowski that she would not have assistants reporting to her as had been outlined in job description that defendant had given Ms. Lewandowski.[18] Defendant's choice to remove from Ms. Lewandowski the responsibility of supervising assistants was a change for the worse for Ms. Lewandowski from her prior job as Assistant to the Dean of the School of Fine and Performing Arts, where she had assistants reporting to her.[19]

Moreover, in Ms. Lewandowski's new position, she was assigned tasks by an assistant (Andre Foisy), which was a change for the worse for Ms. Lewandowski from her prior job as Assistant to the Dean of the School of Fine and Performing Arts, where she had received her assignments directly from the Dean rather than reporting to and receiving her assignments from an assistant, and which was also was a change for the worse for Ms. Lewandowski from the job description that she had been given.[20]

Ms. Lewandowski's pay and benefits were not affected by her transfer to the Associate Provost's office.[21]

## Ms. Lewandowski's supervisor fires her the day before her FMLA leave

On October 17, 2007, which was the last day of work before Ms. Lewandowski was to have gone on a Family and Medical Leave Act leave for a hospital stay for knee

---

[17]     Plaintiff's Statement at ¶15.

[18]     Plaintiff's Statement at ¶10.

[19]     Plaintiff's Statement at ¶11.

[20]     Plaintiff's Statement at ¶¶12, 13.

[21]     Joint Statement at ¶¶25, 26, 28.

surgery, at approximately eleven o'clock in the morning, Ms. Lewandowski was fired by her new supervisor, Dean Nichols.[22] Dean Nichols's firing of Ms. Lewandowski thus occurred approximately six hours before Ms. Lewandowski was to have left work for her FMLA leave that was to have begun the next day.[23]

Ms. Lewandowski's Family and Leave request had been made and approved approximately three weeks earlier, on September 25, 2007, when defendant had received from Ms. Lewandowski a written request under the Family and Medical Leave Act for a leave to begin on October 18, 2007.[24] The written request for Family and Medical leave that defendant received from Ms. Lewandowski stated that the leave was needed for "Hospital Care"; the reason that Ms. Lewandowski needed hospital care was that she was to undergo knee surgery.[25]

Since approximately the month before Ms. Lewandowski had turned in this written request for Family and Medical leave, Ms. Lewandowski had again been Assistant to the Dean of the School of Fine and Performing Arts, and her direct supervisor had been the new Dean of the School of Fine and Performing Arts, Eliza Nichols.[26] Dean Nichols signed and approved Ms. Lewandowski's written Family and Medical Leave Act request.[27] In addition to signing this written Family and Medical

---

[22]    Joint Statement at ¶34, 39; Plaintiff's Statement at ¶17, 19, 20.

[23]    Plaintiff's Statement at ¶19, 20.

[24]    Joint Statement at ¶33, 35.

[25]    Joint Statement at ¶34; Plaintiff's Statement at ¶17.

[26]    Joint Statement at ¶¶31, 32.

[27]    Joint Statement at ¶35.

Leave Act request, Dean Nichols later asked Ms. Lewandowski for the dates that she would be out on Family and Medical Leave, and, in response, Ms. Lewandowski reminded Dean Nichols of those dates.[28]

## Title VII coverage, FMLA coverage and jurisdiction

When Dean Lehrer sexually harassed Ms. Lewandowski through defendant's choosing to fire her, Ms. Lewandowski was an "employee" of defendant's within the definition of §701(f) of Title VII of the Civil Rights Act of 1964 [42 U.S.C. §2000e(f)] and defendant was an "employer" within the definition of §701(b) of Title VII of the Civil Rights Act of 1964 [42 U.S.C. §2000e(b)].[29]  When Ms. Lewandowski requested Family and Medical Leave through defendant's decision to fire her, Ms. Lewandowski was an "eligible employee" within the definition of §101(2) of the Family and Medical Leave Act of 1993, and defendant was an "employer" within the definition of §101(4)(A) of the Family and Medical Leave Act of 1993.[30]

This Court has jurisdiction under §706(f)(3) of Title VII of the Civil Rights Act of 1964, as amended [42 U.S.C. §2000e-5(f)(3)], under §107(a)(2) of the Family and Medical Leave Act of 1993 [29 U.S.C. §2617(a)(2)], and under §1331 of the Judicial Code [28 U.S.C. §1331].[31]

---

[28]     Plaintiff's Statement at ¶18.

[29]     Joint Statement at ¶¶3, 4.

[30]     Joint Statement at ¶¶5, 6.

[31]     Joint Statement at ¶7.

## Argument

I.      **Because there is no genuine issue of material fact but that Ms. Lewandowski has established all the elements of her sexual harassment claim, because an employer is vicariously liable for sexual harassment by a supervisor, and because, as a matter of law, defendant cannot establish the <u>Faragher/Ellerth</u> affirmative defense, Ms. Lewandowski is entitled to partial summary judgment on liability on her sexual harassment claim.**

In the seminal cases of <u>Burlington Industries, Inc. v. Ellerth</u>, 524 U.S. 742 (1998), and <u>Faragher v. Boca Raton</u>, 524 U.S. 775 (1998), the Supreme Court establish that an employer is vicariously liable for sexual harassment by a supervisor.  As the Supreme Court stated in <u>Ellerth</u>:

> "An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee."

<u>Ellerth</u>, 524 U.S. at 765.

In our case, no genuine issue of material fact controverts the existence of such vicarious liability.  There is no genuine issue of material fact but that Dean Lehrer was Ms. Lewandowski direct supervisor, with the power to fire her, to cut her pay, etc.  Nor is there any genuine issue of material fact but that the environment that Dean Lehrer created was hostile.  Dean Lehrer told Ms. Lewandowski, his direct subordinate, that he wanted her to have his children, that he wanted to wake up in her bed, that he wanted to have an affair with her, that nobody would get hurt, and that nobody would need to know.  Dean Lehrer gave Ms. Lewandowski a poem that referenced waking up in her arms.  Dean Lehrer told Ms. Lewandowski that he had strong feelings for her and that he had to act upon those feelings.  Finally, Dean Lehrer attempted to hug and kiss

Ms. Lewandowski, at which point Ms. Lewandowski pushed him away and said "Let's not and say we did". In short, there are no genuine issues of material fact that negates defendant's vicarious liability for Dean Lehrer's sexual harassment.

Nor can defendant establish the <u>Faragher/Ellerth</u> affirmative defense. In <u>Faragher</u>, the Supreme Court said that the affirmative defense had:

> "two <u>necessary</u> elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."

524 U.S. 775 at 807 (emphasis added).

In our case, there is no genuine issue of material fact but that defendant cannot establish the second <u>necessary</u> element: "that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Defendant admits that Ms. Lewandowski complained promptly (the day after the incidents), following defendant's procedure. <u>See</u>, Joint Statement of Facts at ¶¶12, 13. Ms. Lewandowski's prompt complaint following defendant's procedure means that, as a matter of law, defendant cannot establish the affirmative defense because defendant cannot prove the second necessary element: an unreasonable failure on the plaintiff's part to take advantage of the employer's corrective opportunities.

Even assuming for the sake of argument that defendant's anti-sexual-harassment policy was a good one and that defendant's reaction was appropriate and reasonable, in the absence of any failure by Ms. Lewandowski to avail herself of the policy, the alleged

effectiveness of defendant's policy and the alleged reasonableness of its reaction go only to damages. That is because Ms. Lewandowski suffered being sexually harassed by her supervisor, and the alleged appropriateness and reasonableness of defendant's policy and of defendant's response cannot make her "unsuffer" that harassment. See, EEOC Enforcement Guidance: Vicarious Employer Liability for Unlawful Harassment by Supervisors (6/18/99), available at www.eeoc.gov/policy/docs/harassment.html. And because Ms. Lewandowski is seeking summary judgment on liability only, defendant is free to argue before the jury that will decide damages that the alleged appropriateness of its policy and the alleged reasonableness of its response mean that Ms. Lewandowski suffered no damages. Ms. Lewandowski will, of course, argue the contrary before the jury, because she actually lived through Dean Lehrer's sexual harassment. Compare, Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53 at 72-73 (2006), in which the Supreme Court stated that a suspension without pay that was later paid back could entitle the plaintiff to damages because the plaintiff lived through the adverse act.

In addition, the Faragher/Ellerth affirmative defense is available only if "no tangible employment action is taken". Faragher, 524 U.S. 775 at 807 . And transfers to jobs with "significantly diminished responsibilities and substantially changed working conditions" are tangible employment actions. Sitar v. Indiana Dept. of Transp., 344 F.3d 720 at 728 (7th Cir. 2003). In our case, there is no genuine issue of material fact but that Ms. Lewandowski suffered such a transfer to a job with "significantly diminished responsibilities". Ms. Lewandowski went from a job with many interesting and important responsibilities, reporting directly to the Dean, serving as the "point" person for the Dean's office, and being the major contact with Administration, the Dean,

the chairs, etc., to a boring, "make-work" job, reporting to an assistant and doing menial busy-work, such as cleaning files, creating file folders, scheduling meetings, checking e-mails, printing documents for various members of the office, and often having nothing at all to do.

Thus, as a matter of law, defendant cannot establish the Faragher/Ellerth affirmative defense for two independent reasons: 1) Ms. Lewandowski promptly complained, so defendant, as a matter of law, cannot establish the second necessary element of the affirmative defense, and 2) defendant's transfer of Ms. Lewandowski from an interesting, important, responsible job to a boring, make-work job was a tangible employment action, so that, as a matter of law, the affirmative defense is not available to defendant at all.

In short, because there is no genuine issue of material fact but that Ms. Lewandowski has established all the elements of her sexual harassment claim, because an employer is vicariously liable for sexual harassment by a supervisor, and because, as a matter of law, defendant cannot establish the Faragher/Ellerth affirmative defense, Ms. Lewandowski is entitled to partial summary judgment on liability on her sexual harassment claim.

**II.     Because there is no genuine issue of material fact but that Ms. Lewandowski has established all the elements of her Family and Medical Leave interference claim, and because intent is not an element of such a claim, Ms. Lewandowski is entitled to partial summary judgment on liability on her FMLA interference claim.**

The Seventh Circuit has set out the five elements of a Family and Medical Leave Act interference claim as follows:

"To prevail on an FMLA interference claim, an employee need only show that his employer deprived him of an FMLA entitlement; <u>no finding of ill intent is required</u>....Accordingly, the employee must establish that: (1) he was eligible for the FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled."

<u>Burnett v. LFW Inc.</u>, 472 F.3d 471 at 477 (7th Cir. 2006) (citation omitted, emphasis added).

In our case, no genuine issue of material fact controverts the existence of each and every of these five elements of Ms. Lewandowski's FMLA interference claim:

(1)     "<u>[s]he was eligible for the FMLA's protections</u>".  This element is undisputed, because defendant admitted that Ms. Lewandowski was an "eligible employee" under the FMLA.

(2)     "<u>[her] employer was covered by the FMLA</u>".  This element is undisputed, because defendant has admitted that it was an "employer" under the FMLA.

(3)     "<u>[s]he was entitled to leave under the FMLA</u>".  There is no genuine issue of material fact but that defendant approved Ms. Lewandowski's written request for FMLA leave.

(4)     "<u>[s]he provided sufficient notice of [her] intent to take leave</u>".  There is no genuine issue of material fact but that defendant approved Ms. Lewandowski's written request for FMLA leave over three weeks before that leave was to have begun.

(5)        "[her] employer denied [her] FMLA benefits to which [s]he was

entitled".  There is no genuine issue of material fact but that defendant

fired Ms. Lewandowski at approximately eleven o'clock the morning of

October 17, 2007 – which was approximately six hours before

Ms. Lewandowski was to have left work for her Family and Medical leave

that was to have begun the next day – and thereby deprived

Ms. Lewandowski of her right to FMLA leave.

Further, because an FMLA interference claim does not require proof of intent, as the Seventh Circuit noted in Burnett, supra, 472 F.3d at 477, Your Honor's fellow judges in the Northern District of Illinois have entered summary judgment for plaintiffs who establish all the elements of an FMLA interference claim.  See, e.g., Jackson v. Jernberg Industries, Inc., 677 F.Supp.2d 1042 (N.D. Ill. 2010) (Gottschall, J.), Harvey v. Waste Management of Illinois, 2010 WL 1741742 (N.D. Ill. #08 C 6828, 4/29/2010) (Zagel, J.). Jordan v. Beltway Rail Co. of Chicago, 2009 WL 537053 at *7 (N.D. Ill. #06 C 6024, 3/4/2009) (Zagel, J.).  And just as the plaintiffs in these cases established that there was no genuine issue of material fact as to the elements of their FMLA interference claims, so did Ms. Lewandowski establish there was no genuine issue of material fact as to the elements of her FMLA interference claim.  And as those plaintiffs received summary judgment on their FMLA interference claims because they established that there was no genuine issue of material fact as to the elements of their FMLA interference claims, so should Ms. Lewandowski, having established that there is no genuine issue of material fact as to the elements of her FMLA interference claim, receive summary judgment on that claim.

Thus, there is no genuine issue of material fact but that Ms. Lewandowski has established each and every of the five elements of her FMLA interference claim, and Ms. Lewandowski is entitled to summary judgment on liability on that claim.

## Conclusion

For these reasons, plaintiff Lisa Lewandowski moves for partial summary judgment on liability on Count I (Sexual Harassment) and on Count VI (FMLA Interference) and the scheduling of a prove-up of damages on those Counts.

Lisa Lewandowski,
plaintiff,

By:   s/David L. Lee
Her attorney

**Proof of service**:  I, David L. Lee, an attorney, certify that this Memorandum in Support was served on defendant's attorney by e-mail on June 17, 2011.

s/David L. Lee
David L. Lee

David L. Lee
ARDC #1604422
LAW OFFICES OF DAVID L. LEE
53 W. Jackson Blvd., Suite 505
Chicago, IL  60604
312-347-4400
d-lee@davidleelaw.com