**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LISA LEWANDOWSKI, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.: 1:09-cv-04949 |
| | ) | |
| COLUMBIA COLLEGE CHICAGO, an Illinois not- | ) | Judge: Blanche M. Manning |
| for-profit corporation, | ) | |
| Defendant. | ) | Magistrate Young B. Kim |
| | ) | |

<u>**MEMORANDUM IN SUPPORT OF DEFENDANT'S**</u>
<u>**MOTION FOR SUMMARY JUDGMENT**</u>

Columbia College Chicago ("Columbia"), by and through its attorneys, Tribler Orpett &

Meyer, P.C., presents the following memorandum in support of its motion for summary judgment.

### Procedural Facts

This litigation arises from the plaintiff's employment with Columbia, a not-for-profit

institution located in Chicago, Illinois. In her amended complaint, she asserts multiple claims

against Columbia under two federal statutes: Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§2000e, and the Family Medical Leave Act of 1993 (FMLA), 29 U.S.C. §2611. In Count I, the

plaintiff alleges she was sexually harassed while employed, in violation of Title VII. Count II alleges

retaliation in violation of Title VII. Count III alleges retaliation in violation of the FMLA and Count

IV alleges interference with the plaintiff's FMLA rights. Count V seeks recovery pursuant to Illinois

common law prohibiting retaliatory discharge.

In response to the plaintiff's amended complaint, Columbia filed an answer denying all

allegations of fault and asserted an affirmative defense pursuant to the decisions in *Burlington*

*Industries v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775,

118 S.Ct. 2275 (1998). (Columbia's Statement of Undisputed Material Facts, "CS", para. 65.) By its

motion for summary judgment, Columbia seeks dismissal with prejudice of all counts of the

plaintiff's amended complaint.

## Background Information

In May 2005, the plaintiff began working with Leonard Lehrer, Dean of Columbia's School of Fine and Performing Arts. (CS, para. 2) Her position in Lehrer's office was Assistant to the Dean. (Joint Statement of Undisputed Fact ["JS"], para. 8) Lehrer was the plaintiff's direct supervisor at that time. (CS, para. 3; JS, para. 9 )

### a. The Plaintiff's Complaint and Columbia's Investigation

The plaintiff alleges that she first complained about Lehrer's conduct to Columbia's Office of Human Resources on Oct. 11, 2006. (JS, para. 10) Her complaint was made to Patricia Olalde, Columbia's Director of Human Resources. (JS, para. 10) The plaintiff did not tell Olalde that she had been sexually harassed by Lehrer; rather, she advised that Lehrer was being "overly friendly." (JS, para. 11)

At the time the plaintiff brought her complaint to Columbia's Office of Human Resources, Columbia had a comprehensive written policy prohibiting harassment based on sex or any other characteristic protected by state, federal and local law. (CS, para. 7.) Columbia provided, and continues to provide, anti-harassment workshops to its employees, including department chairs, supervisors and deans. (CS, para. 8, 9) At the time the plaintiff complained of Lehrer's conduct in 2006, Columbia provided anti-harassment workshops to its employees. (CS, para. 8, 9) As part of their training, deans and department chairs are instructed that they cannot retaliate against employees for asserting their federal rights. (CS, para. 10) Deans and department chairs are told that they may suffer adverse consequences if they retaliate against employees who exercise their federal rights. (CS, para. 11) Those adverse consequences can include verbal or written reprimands and termination. (CS, para. 12)

The plaintiff's report on Oct. 11, 2006, concerned alleged conduct by Lehrer on Oct. 10,

2006. (JS, para. 12) In response to that report, Olalde immediately investigated the complaint by speaking with the plaintiff about her concerns and then interviewing Lehrer. She maintained frequent contact with the plaintiff to verify her wellbeing. In fact, the day following the complaint, Olalde sent an e-mail to the plaintiff to inquire about her condition. (JS, para. 14)

As part of her investigation, Olalde interviewed Lehrer and questioned him about the plaintiff's allegations. (JS, para. 15) During the interview, Lehrer declined to deny that he had made the statements the plaintiff attributed to him; however, he expressed a belief that the plaintiff welcomed his conduct. (CS, para. 17) The plaintiff herself acknowledged that, during the course of her work with Lehrer, she initiated hugs and kisses on multiple occasions. (CS, para. 5, 6)

Columbia shielded the plaintiff from any possible retaliation or even discomfort by advising the plaintiff that she should not be present in the Dean's Office during Olalde's investigation. (JS, para. 16) Additionally, Stephanie Griffin, Columbia's Assistant Vice President of Human Resources, suggested to the plaintiff that she should take time off from work so that she could avoid being in the office on days when Lehrer was working. The plaintiff followed that suggestion. (JS, para. 19, 20) The plaintiff can produce no evidence that she was penalized in any way during her days out of the office and there was no deduction in her compensation or benefits.

### b. The Plaintiff's Failure to Avoid Harm

Inexplicably, the plaintiff continued to voluntarily socialize with Lehrer even after she complained about his alleged conduct to Olalde. (CS, para. 13, 14) She claims she wanted to tell him personally that his behavior was unacceptable but can provide no explanation for why this communication could not have been made during working hours or even via telephone or e-mail. Instead, she agreed to meet Lehrer socially for dinner and permitted him to enter her apartment, with no supervision by Columbia witnesses. Curiously, after reporting Lehrer's conduct to Olalde and knowing how Lehrer allegedly had conducted himself the night before, the plaintiff voluntarily

3

shared a cab with Lehrer to her residence and permitted him to enter her apartment. (CS, para. 14) Clearly, by these acts, the plaintiff failed to avoid harm.

### c. The Plaintiff's Temporary Transfer to Another Administrative Position

After being advised of the investigation into the plaintiff's complaint, Columbia's Provost, Steven Kapelke, reprimanded Lehrer for inappropriate conduct. (CS, para. 18) Pending Lehrer's removal and the arrival of a new dean for the School of Fine and Performing Arts, Kapelke determined that the plaintiff should not be required to continue working for Lehrer and, instead, should be temporarily transferred to another administrative position, working for Anne Foley, Columbia's Associate Provost. (CS, para. 20, 23; JS 23, 24)

In the interim, the plaintiff exercised her rights under the Family Medical Leave Act by seeking and receiving leave from mid-December 2006 until February the following year. (JS, para. 22) She has presented no evidence demonstrating that Columbia retaliated against her as a result of the absence or that it interfered with her FMLA rights.

When the plaintiff returned from her FMLA leave, she began working in her temporary assignment as Assistant to Anne Foley, Columbia's Associate Provost. The plaintiff's compensation was the same as it had been when she worked as Assistant to the Dean. (JS, para. 25) The benefits received by the plaintiff as Assistant to the Associate Provost were the same as they had been when she worked as Assistant to the Dean. (JS, para. 26) The position of Associate Provost was a position of greater authority than the position of Dean, held by Lehrer. (CS, para. 25) The hours worked by the plaintiff as Assistant to the Associate Provost were the same as those she worked when she was Assistant to the Dean. (CS, para. 26) While the plaintiff worked as Assistant to the Associate Provost, she was not required to interact with Lehrer. (JS, para. 27) According to the plaintiff, Anne Foley's office was "a fine working environment" and she had "no problem working there." (CS, para. 27)

4

### d. The Plaintiff's Return to the Dean's Office

After the position of Dean of the School of Fine and Performing Arts was filled by Eliza Nichols, the plaintiff was restored to her former position in the Dean's Office in August 2007. (JS, para. 31) Nichols had no knowledge regarding the reason the plaintiff temporarily worked in the Associate Provost's office before returning to the Dean's Office. (CS, para. 31, 37, 38)

After Nichols assumed the Dean position, she met with the plaintiff to explain to her what her expectations were. She provided information regarding her preferred working style and what the plaintiff's assignments would be. (CS, para. 39) Nichols wanted an assistant who would truly assist her rather than make decisions for her. (CS, para. 40) She wanted the plaintiff to maintain her calendar and files and be responsible for keeping things organized in the Dean's office. She wanted the plaintiff to do things according to the assignments given to her. (CS, para. 41)

During the time that the plaintiff worked for Nichols, Nichols became concerned that she could not rely on the plaintiff to be truthful and she generated a document containing ongoing notes regarding her continued disappointment. (CS, para. 63) For example, Nichols advised the plaintiff that she did not want her to communicate directly with Department Chairs[1] unless Nichols explicitly requested that she do so. (CS, para. 42) After giving the plaintiff this instruction, she learned that the plaintiff communicated directly with the Chairs without having been authorized to do so. (CS, para. 43) When Nichols questioned the plaintiff about why she had communicated directly with the Chairs, the plaintiff told Nichols that the Chairs initiated contact with her and that she only responded. (JS, para. 36) Nichols was told by several of the Chairs that it was, in fact, *the plaintiff* who initiated contact. (CS, para. 44, 45)

Another instance of the plaintiff's apparent untrustworthiness arose when Nichols, in preparation for the plaintiff's FMLA leave, instructed the plaintiff to meet with Nichols' other staff

5

members to review matters that might arise while she was away. (CS, para. 46) Nichols had already authorized the plaintiff's FMLA request. (JS, para. 35) When Nichols later asked the plaintiff whether she had complied with her instruction and met with the other staff members, the plaintiff told her that she could not meet with them because Jim MacDonald, the Associate Dean, called staff member Allison Ratliff away for another task. (CS, para. 47) When Nichols questioned MacDonald about what had happened, he denied that he had called Ratliff away. (CS, para. 48)

An additional instance of the plaintiff's apparent untrustworthiness arose when Nichols directed the plaintiff to prepare a template for use by the Chairs for their reappointments. Having learned that Leonard Lehrer previously used a template that was different from the other deans, Nichols specifically told the plaintiff to prepare a template for her that was the same as the templates used by the deans of Columbia's other schools. (CS, para. 49) Instead of following Nichols' instructions, the plaintiff used a format previously used by Lehrer. (CS, para. 50) After receiving the template prepared by the plaintiff, Nichols asked the plaintiff if the template was what Nichols had asked her to prepare. The plaintiff told her that it was. (CS, para. 51) Nichols compared the template given to her by the plaintiff with the template used by the other deans and found that they were completely different. (CS, para. 53) When Nichols questioned the plaintiff about the different templates, the plaintiff initially could not provide an explanation and eventually acknowledged that she had not done what she was instructed to do. (CS, para. 54)

Another instance that gave Nichols cause for concern arose from the plaintiff's interest in the vacant Assistant Dean position in the School of Fine and Performing Arts. The plaintiff advised Nichols when they first met that she intended to submit her application for the Assistant Dean position. (CS, para. 55) At that time, Nichols instructed the plaintiff to have no involvement in the search for Assistant Dean as she herself was to be a candidate. (CS, para. 56) Despite that clear

---

[1] Columbia's College Chicago's School of Fine and Performing Arts is comprised of several departments. Each

instruction, Lewandowski told Nichols that Allison Ratliff had told her to order the computer that was to be given to the new Assistant Dean. (CS, para. 57) The plaintiff has acknowledged that Nichols seemed offended that the plaintiff had inquired about setting up the new Assistant Dean's office. (CS, para. 58) The plaintiff also acknowledged that Nichols was displeased with the plaintiff because she had instructed the plaintiff not to have anything to do with the search for Assistant Dean. (CS, para. 59)

After noting several examples of apparent untrustworthy conduct, Nichols terminated the plaintiff on Oct. 17, 2001, stating she did not believe she could trust her. (JS, para. 39; CS, para. 61)

### Standard for Granting Summary Judgment

Summary judgment is appropriate when there is no genuine issue concerning any material fact and the non-moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In the present matter, undisputed evidence demonstrates that Columbia's application of its anti-harassment policies, coupled with the plaintiff's failure to avoid harm, triggers Columbia's affirmative defense under *Burlington Industries v. Ellerth*, 524 U.S.742, 765, 118 S.Ct. 2257 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275 (1998). There exists no evidence that the plaintiff suffered retaliation because she engaged in protected activity under Title VII. Moreover, the absence of any evidence that Columbia retaliated against the plaintiff for exercising her FMLA rights or unlawfully interfered with those rights renders summary judgment in Columbia's favor appropriate. Finally, the plaintiff's claim for damages under the Illinois common law of retaliatory discharge is improper as her sole and exclusive remedy for that claim rests with the Illinois Human Rights Act. The plaintiff's claim for common law retaliatory discharge for exercising her FMLA rights similarly cannot stand alone as a separate action.

---

department is led by a faculty member who holds the title of Chair.

**Argument – Title VII – Sexual Harassment**

To withstand summary judgment on her claim of hostile work environment, the plaintiff must demonstrate that: (1) she was subjected to unwelcome conduct of a sexual nature; (2) the conduct was severe or pervasive enough to create a hostile work environment; (3) the conduct was directed at her because of her sex; and (4) there is a basis for employer liability. *Whittaker v. Northern Illinois University*, 424 F.3d 640, 645 (7th Cir. 2005). If the alleged harasser is the plaintiff's supervisor, the employer will be held strictly liable for the alleged conduct if there was a tangible employment action. *Ellerth*, 524 U.S. at 765. However, if there was no tangible employment action, the employer is entitled to assert an affirmative defense that (1) it exercised reasonable care or diligence to prevent and correct any harassing behavior; and (2) the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities to avoid harm. *Id.* If the employer can establish both factors, it is not liable for the supervisor's conduct. *Id.*

In the present matter, Columbia asserted its affirmative defense pursuant to the U.S. Supreme Court's *Faragher* and *Ellerth* decisions. Though the plaintiff allegedly was harassed by her supervisor, Leonard Lehrer, she has presented no evidence that she suffered a tangible employment action by his hand. There is no evidence that Lehrer played any role in the decision to terminate her employment. Uncontested evidence establishes that Eliza Nichols, the individual who made the termination decision a full year after the plaintiff's complaint of alleged harassment, knew nothing of that complaint.

As there was no tangible employment action by the plaintiff's supervisor, Columbia asserts the two-factor affirmative defense set forth above. First, Columbia notes that the comprehensive anti-harassment policy in place at the time of Lehrer's alleged conduct evidences the College's exercise of reasonable care to prevent sexual harassment. Columbia's written policies clearly identify the prohibited conduct and employees of the College, including department chairs and school deans,

8

were required to attend anti-harassment training. Patricia Olalde, Columbia's Director of Human Resources, testified that management-level employees are told that retaliation is prohibited against employees who exercise their civil rights under federal law and that they may be reprimanded or even terminated for engaging in unlawful retaliation. Additionally, Columbia took reasonable steps to correct the alleged behavior. Immediately after the plaintiff reported her concerns to the Office of Human Resources, Olalde undertook her investigation by speaking with the plaintiff, Lehrer and James MacDonald, another individual to whom the plaintiff spoke regarding her concerns.

Though the results of Columbia's investigation were inconclusive as there existed a question regarding Lehrer's misinterpretation of the plaintiff's own physically affectionate conduct, the plaintiff was encouraged, without penalty, to remain out of the office when Lehrer was present and, until his removal, she was transferred on a temporary basis to another position with the same pay and benefits, working in the same administrative capacity as she had worked when in Lehrer's office. When Eliza Nichols replaced Lehrer, the plaintiff was immediately restored to her previous position, still with no reduction in compensation or benefits.

Despite Columbia's efforts to prevent harassment by separating the plaintiff and Lehrer, the plaintiff failed to avoid further harm after reporting Lehrer by socializing with him, sharing a cab with him and permitting him to visit her apartment, thus further subjecting herself to conduct she alleges was sexual harassment. The plaintiff could provide no reasonable explanation for why she voluntarily socialized with Lehrer after reporting his conduct, thereby subjecting herself to further alleged harassment. Clearly, the plaintiff failed to avoid harm. Consequently, in the absence of any tangible employment action, Columbia's affirmative defense prevails and the plaintiff's sexual harassment claim should be dismissed.

### Argument- Title VII – Retaliation

In Count II of her amended complaint, the plaintiff alleges that she suffered retaliation for

opposing unlawful sexual harassment and for filing her Charge of Discrimination. A plaintiff

asserting a claim of discrimination or retaliation under Title VII may choose to prove her case under

either the direct or indirect method. *Poer v. Astrue*, 606 F.3d 433, 439 (7th Cir. 2010). As the plaintiff

in the present matter can produce no direct evidence of retaliation, it is presumed that she will

proceed using the indirect method. Under that method, the plaintiff must first show a prima facie

case of retaliation which requires her to produce admissible evidence that (1) she engaged in

statutorily protected activity; (2) she performed her job according to her employer's legitimate

expectations; (3) she suffered an adverse employment action; and (4) she was treated less favorably

than other similarly situated employees who did not engage in statutorily protected activity. *South v.*

*Illinois Environmental Protection Agency*, 495 F.3d 747, 751 (7th Cir. 2007).

     In the present matter, the plaintiff alleges that she suffered retaliation because she

complained of unlawful harassment and then filed a Charge of Title VII discrimination.

Nevertheless, the only adverse employment action taken against the plaintiff was her termination by

Eliza Nichols which occurred almost one full year after the plaintiff's complaint of alleged

harassment in October 2006 and approximately 10 months after her Charge of Discrimination was

filed. As there is no evidence that Nichols had any knowledge regarding the report of alleged

harassment or the EEOC Charge, there is no evidence to support the plaintiff's claim that she

suffered retaliation for engaging in activity protected by Title VII. Additionally, she has failed to

identify any similarly-situated employee who did not report harassment or file a Charge of

Discrimination and received more favorable treatment.

     As examples of alleged adverse employment actions, the plaintiff argues that she was denied

her own computer and lost office space she formerly occupied when Lehrer was Dean.

Nevertheless, both of those alleged actions were taken by Nichols after she assumed the position of

Dean and, since no evidence has been presented to indicate that Nichols had any knowledge

regarding the plaintiff's harassment complaint or her Charge of Discrimination, there is no basis for the plaintiff to claim that Nichols' decisions were retaliatory. Moreover, the plaintiff has acknowledged that she was given a computer upon her return to the Dean's office, and was then given a new computer after she requested one. (CS, para. 29, 30, 62) As the Seventh Circuit noted in *Lucero v. Nettle Creek School*, 566 F.3d 720 (7th Cir. 2009), "if personal preference alone was sufficient to establish adverse employment action, the objective requirement for such a finding would effectively be eliminated and federal employment law would become a mechanism for enforcing employee preferences rather than remedying materially adverse treatment." *Id.* at 730. Though the plaintiff was dissatisfied with the way the new Dean configured the office space, her desire to sit in the same spot she occupied when Lehrer was Dean does not equate to a materially adverse employment action.

### Argument - FMLA – Retaliation

As the plaintiff has not alleged that any statement or conduct by Columbia provides direct evidence of retaliatory motive, the plaintiff must attempt to prove her FMLA retaliation claim using the indirect method. Under that method, the plaintiff must set forth a prima facie case of retaliation which requires a showing that (1) she engaged in statutorily protected activity; (2) she met her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 593 (7th Cir. 2008). Once the prima facie case is established, the burden shifts to the employer to produce a non-discriminatory reason for this action. *Id.* at 585. If the employer meets this burden, the burden shifts back to the employee to demonstrate that the proffered reason is pretextual. *Id.* at 593. As the Seventh Circuit noted in *Burks v. Wisc. Dept. of Transp.*, 464 F.3d 744, 754-755 (7th Cir. 2006), an "employee's attempt to avoid summary judgment cannot succeed unless the employee puts forth evidence suggesting that the

11

employer itself did not believe the proffered reasons for termination." In the present matter, there is no such evidence. Additionally, the plaintiff cannot demonstrate that she met Nichols' legitimate expectations at the time of termination and, therefore, she cannot satisfy the prima facie elements.

Eliza Nichols testified that a series of incidents occurred which led her to conclude that she could not trust the plaintiff. On more than one occasion, Nichols believed she caught the plaintiff contradicting instructions she had given her. As noted above, Nichols then questioned other members of her staff and department Chairs under her supervision regarding information she was given by the plaintiff. Though the plaintiff may question the conclusion Nichols reached regarding her credibility, she can provide no evidence demonstrating, as the Seventh Circuit requires, that Nichols did not *believe* the proffered reasons for the termination decision. The plaintiff's FMLA retaliation claim therefore cannot survive summary judgment.

Should the plaintiff argue that the timing of her termination creates a triable issue of fact defeating summary judgment, Columbia refers the court to the holding in *Spector v. U.S. Bank National Assoc.*, 2008 U.S. App.LEXIS 14833, in which the plaintiff was fired within two weeks of her request for FMLA leave. Despite the close proximity, the court concluded that the timing between Spector's request and the termination could not support an inference of retaliatory discharge sufficient to defeat the defendant's motion for summary judgment. *Id.* at *5. It further noted that temporal proximity alone generally is insufficient to create an issue of material fact on the issue of causation. *Id.* at *9. See also *Buie v. Quad/Graphics, Inc.* 366 F.3d 496, 50607 (7th Cir. 2004). Finally, the court noted that, as in the present matter, the plaintiff was unable to rebut her employer's legitimate, non-discriminatory reason for its decision to fire her and, consequently, her FMLA claim did not survive. In the present matter, temporal proximity is the *entire* basis for the plaintiff's FMLA retaliation claim. Standing alone, it cannot defeat summary judgment.

Certainly, the plaintiff may argue that Nichols' assessment of her performance was incorrect but, as the Seventh Circuit concluded in *Ptasznik v. St. Joseph Hospital*, 464 F.3d 691, 697-98 (7th Cir. 2006), a court "should not interfere in employment decisions simply where [it] believes an employer has made a poor choice." Citing its holding in *Ptasznik*, the court later wrote, "If such disagreements were enough to avoid summary judgment and go to trial on an indirect proof case, summary judgment would become extinct and employer's evaluations of employees would be supplanted by federal juries' evaluations. We have said in substance more times than we can count that when an employer articulates a plausible, legal reason for discharging the plaintiff, "it is not our province to decide whether that reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination."" *Silverman v. Board of Education of the City of Chicago*, 2011 U.S. App. LEXIS 5661 at *21. The true reason for the plaintiff's termination, whether she agrees with it or not, had nothing to do with her request for leave. Her FMLA retaliation claim therefore fails.

### Argument- FMLA – Interference

Responding to the plaintiff's claim for FMLA interference, Columbia offers the aforementioned evidence of Nichols' dissatisfaction with her performance. Though a claim for FMLA interference requires no showing of motive, when an employee alleges that the employer interfered with her substantive rights under the Act, the Seventh Circuit requires her to "establish, by a preponderance of the evidence, that she is entitled to the benefit she claims." *Diaz v. Fort Wayne Foundry Corp.*, 131 F.3d 711, 713 (7th Cir. 1997). Articulating this rule, the Seventh Circuit wrote: "An employee may be fired for poor performance when she would have been fired for such performance even absent her leave." *Kohl's v. Beverly Enterprises Wisconsin, Inc.* 259 F.3d 799, 805 (7th Cir. 2001); See also *Clay v. City of Chicago Dept. of Health*, 143 F.3d 1092, 1094 (7th Cir. 1998).

13

In the present matter, Nichols grew to believe that she could not trust the plaintiff. The plaintiff herself acknowledged that Nichols was displeased with her conduct. As an employee exercising her statutory rights under the FMLA, the plaintiff was entitled to no greater rights than she would have had, absent her request for leave. Dean Nichols found the plaintiff's conduct unacceptable and terminated her for that reason. Despite her request for leave, the plaintiff was not excused from the expectations Nichols would have made of any of her employees, regardless of their FMLA status. The plaintiff's FMLA interference claim therefore must fail.

## Argument – Count V – Common Law Retaliatory Discharge

In the final count of her complaint, the plaintiff seeks recovery for common law retaliatory discharge. She alleges she engaged in protected activity by exercising her rights under Title VII and the FMLA and, consequently, suffered retaliation. The plaintiff's claim under Count V must fail however because the Illinois Human Rights Act ("IHRA") provides the exclusive remedy in Illinois for alleged retaliation based on complaints of sexual harassment. In *Hobson v. Tishman Speyer Properties*, 2008 U.S. Dist. LEXIS 49254, the plaintiff filed a multi-count complaint against her employer, including counts for sexual harassment pursuant to Title VII and a count for common law retaliatory discharge. The court dismissed the plaintiff's common law claim, finding that it was preempted by the IHRA. The court noted that the IHRA is the exclusive remedy for the redress of civil rights violations in Illinois, 775 ILCS 5/8-111(D), as it is a civil rights violation to "retaliate against a person because he or she has opposed that which he or she reasonably and in good faith believes to be ... sexual harassment in employment ... or because he or she has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this Act." *Hobson*, at *18-19, citing 775 ILCS 5/6-101(A).

The plaintiff's attempt to base her common law claim on the exercise of her rights under the FMLA also must fail as that statute does not involve those matters that strike at the heart of a

14

citizen's social rights, duties, and responsibilities. In *Sallis v. Prime Acceptance*, 2005 U.S. Dist. LEXIS 16693, the court noted that a plaintiff claiming common law retaliatory discharge must demonstrate, *inter alia*, that her discharge violates a clear mandate of public policy. *Id.* at *6, citing *Hartlein v. Illinois Power Co*, 151 Ill.2d 142, 601 N.E.2d 720 (Ill. 1992). For an action of retaliatory discharge to be prohibited under public policy, the matter "must strike at the heart of a citizen's social rights, duties, and responsibilities..." *Id.* at 878-79. In the *Sallis* case, as in the present matter, the plaintiff's claims included alleged violation of the FMLA and also common law retaliatory discharge, based upon the exercise of her FMLA rights. The court dismissed the common law count, holding that "the FMLA does not involve those matters that strike at the heart of a citizen's social rights, duties and responsibilities." *Sallis*, at *9, citing *Handel v. Belvedere USA Corp.*, 2001 U.S. Dist. LEXIS 17357. The court also noted that the FMLA itself provides a remedy for retaliation. *Sallis*, at *10-11. As the plaintiff in the present matter seeks recovery pursuant to the FMLA, she is barred from claiming additional recovery under the common law.

### Conclusion

For the reasons set forth in the preceding memorandum of law, Columbia seeks dismissal with prejudice of all counts of the plaintiff's amended complaint.

Respectfully submitted,

TRIBLER ORPETT & MEYER, P.C.

By: s/ Jennifer H. Kay
Attorney for Columbia College Chicago

## CERTIFICATE OF SERVICE

The undersigned attorney deposes and states that a copy of Defendant's Memorandum in Support of its Motion for Summary Judgment was served upon the following:

> David L. Lee
> 53 West Jackson Blvd.
> Suite 660
> Chicago, IL 606047
> d-lee@davidleelaw.com

by electronic service via the Court's ECF System on the 26th day of July, 2011.

> Respectfully Submitted,
>
>
> s/ Jennifer H. Kay
> Attorney for Columbia College Chicago

Jennifer H. Kay, Esq. -- ARDC #6226867
TRIBLER ORPETT & MEYER, P.C.
225 W. Washington, Suite 1300
Chicago, Illinois 60606
(312) 201-6400
jhkay@tribler.com