*In the United States District Court*
*for the Northern District of Illinois*
*Eastern Division*

| | |
|---|---|
| Lisa Lewandowski,<br><br>plaintiff,<br><br>– v –<br><br>Columbia College Chicago, an Illinois not-for-profit corporation,<br><br>defendant. | **#09 CV 04949**<br><br>Judge Manning<br><br>Magistrate Judge Kim<br><br>**Jury demanded** |

**Memo Opposing Defendant's Motion for Summary Judgment**

## Statement of Facts

Ms. Lewandowski's supervisor admits to having sexually harassed her

      In October 2006, Leonard Lehrer, the Dean of defendant's School of Fine and

Performing Arts, admitted to defendant's sexual-harassment investigator that he had:

- told Lisa Lewandowski (his direct subordinate and plaintiff in this case) that he wanted her to have his children;

- told Ms. Lewandowski that he wanted to wake up in her bed;

- attempted to hug and kiss Ms. Lewandowski, at which point Ms. Lewandowski pushed him away and said "Let's not and say we did";

- told Ms. Lewandowski that he wanted to have an affair with her, that nobody would get hurt, and that nobody would need to know;

- given Ms. Lewandowski a poem about waking up in her arms;

- told Ms. Lewandowski that he had strong feelings for her and that he had to act upon those feelings; and

- told Ms. Lewandowski that he was attracted to her and that she was his type – tall and slender.[1]

Before Dean Lehrer made these admissions, he had been informed by defendant's

---

[1]     Joint Statement at ¶¶1, 2, 8, 9, 15, 17; Plaintiff's Statement at ¶¶2, 3.

sexual-harassment investigator that he was being interviewed as part of defendant's investigation of Ms. Lewandowski's complaint of sexual harassment.[2] Most of the conduct of which Ms. Lewandowski complained had occurred the day or two before her complaint.[3] Ms. Lewandowski knew to complain to Human Resources because of the sexual-harassment training she had received, and defendant considered Ms. Lewandowski's complaint to be one of sexual harassment.[4]

Dean Lehrer, as Ms. Lewandowski's direct supervisor, had the power to fire and/or promote Ms. Lewandowski and to approve and/or deny her a raise.[5]

In defendant's investigation of Ms. Lewandowski's sexual-harassment complaint, Associate Dean Jim MacDonald told defendant that Ms. Lewandowski's attitude or body language towards Dean Lehrer was never inviting but, rather, had always been stern.[6]

Defendant encourages Ms. Lewandowski to socialize with Dean Lehrer

When Ms. Lewandowski complained of Dean Lehrer's sexual harassment of her, Ms. Lewandowski told defendant's human resources department that she and Dean Lehrer would be having dinner together that evening, whereupon defendant encouraged Ms. Lewandowski to discuss with Dean Lehrer during that dinner his behavior towards her; defendant also checked-in with Ms. Lewandowski after the dinner to see how that

---

[2] Joint Statement at ¶17.

[3] Joint Statement at ¶12; Plaintiff's Statement at ¶¶2, 3.

[4] Plaintiff's Response to Def's Statement at Additional Facts ¶1; Joint Statement at ¶13.

[5] Joint Statement at ¶¶1, 2, 8, 9.

[6] Plaintiff's Response to Def's Statement at Additional Facts ¶2.

conversation with Dean Lehrer had gone.[7]

Defendant's slap-on-the-wrist of Dean Lehrer

Despite defendant's considering Ms. Lewandowski's complaint to be one of sexual harassment and Dean Lehrer's confession as to his conduct, defendant claimed to be unable to determine whether it was sexual harassment for Dean Lehrer to have told Ms. Lewandowski 1) that he wanted to have "my sperm extracted" and used to impregnate her, 2) that he wanted her to have his children, 3) that he has strong feelings for her and had to act on them, 4) that she was his type, tall and slender, 5) that he wanted to have an affair with her, and 6) that he wanted to draw her in the nude, and/or for Dean Lehrer to have made the other remarks and/or to have engaged in the other conduct, and Provost Stephen Kapelke, who was in charge of defendant's sexual harassment policy did not know whether such conduct constituted sexual harassment.[8]

Defendant took no actions against Dean Lehrer as a result of Ms. Lewandowski's complaint of sexual harassment except for allegedly placing an unsigned letter not on defendant's letterhead Dean Lehrer's personnel file.[9]

Defendant transfers Ms. Lewandowski to a much worse job

When Ms. Lewandowski had worked as Dean Lehrer's Assistant, her job involved many important responsibilities, including: supervising graduate students, serving as a liaison to college administration, department chairs and department assistants, assisting department chairs and department assistants on college policies and

---

[7]    Plaintiff's Response to Def's Statement at Additional Facts ¶¶3. 4.

[8]    Plaintiff's Response to Def's Statement at Additional Facts ¶¶5, 6, 12.

[9]    Plaintiff's Response to Def's Statement at Additional Facts ¶¶13, 14.

procedures, serving as a liaison to the Office of Academic Initiatives and International Programs, researching and gathering information for reports and projects, facilitating budget preparation and maintenance, facilitating faculty evaluations with department chairs, facilitating school faculty retreats and special events for the Dean's office, assisting in resolving student concerns, processing all check requests, travel reimbursements, stipends, and grade change forms, and prioritizing the Dean's weekly, monthly, and semester schedule.[10] Ms. Lewandowski was also the "point" person for the Dean's office and was regarded as the major contact with Administration, the Dean, the Associate Dean, all chairs, the Office of Academic Initiatives and International Programs, faculty, students, student organizations, major School and College committees, and professional organizations.[11]

Ms. Lewandowski took time off away from the office for several months following the sexual harassment.[12] During that time, defendant learned that Ms. Lewandowski had filed a Charge of Discrimination with the EEOC and had hired an attorney.[13] Soon thereafter, defendant began instructing its employees to copy Provost Kapelke and Assistant Vice President Griffin on communications with Ms. Lewandowski, even standard, form communications.[14] Then, in February 2007, defendant transferred

---

[10]   Plaintiff's Statement at ¶7.

[11]   Plaintiff's Statement at ¶8.

[12]   Joint Statement at ¶20.

[13]   Plaintiff's Statement at ¶16.

[14]   Plaintiff's Response to Def's Statement at Additional Facts ¶15.

Ms. Lewandowski to the Associate Provost's office.[15] Shortly before that transfer, defendant gave Ms. Lewandowski a job description for that position.[16]

Before that transfer, defendant told Ms. Lewandowski that Associate Provost Foley knew why Ms. Lewandowski was being transferred, and Foley had written, "We need to get together sometime this week to talk about what routine tasks (if any) to assign to Lisa while she is here."[17] On Ms. Lewandowski's first day in her new position, Associate Provost Foley told Ms. Lewandowski that things had changed.[18] Throughout Ms. Lewandowski's time with the Associate Provost's office, the vast majority of the tasks assigned to her were menial busy-work, such as cleaning files, creating file folders, scheduling meetings, checking e-mails, and printing documents for various members of the office; indeed, Ms. Lewandowski often was given no assignments at all and had nothing to do.[19] On Ms. Lewandowski's first day in her new position, Associate Provost Foley told Ms. Lewandowski that she would not have assistants reporting to her, contrary to the position's job description, and in fact, in Ms. Lewandowski's new position, she was assigned tasks by an assistant.[20] All this was a change for the worse for Ms. Lewandowski from her prior job, where she had done interesting, meaningful, responsible work, had assistants reporting to her, and had received her assignments directly from the Dean, rather than reporting to and receiving her assignments from an

---

[15] Joint Statement at ¶¶23, 24; Plaintiff's Statement at ¶¶4, 16.

[16] Plaintiff's Statement at ¶5.

[17] Plaintiff's Statement at ¶6; Plaintiff's Response at Additional Facts ¶24.

[18] Plaintiff's Statement at ¶9.

[19] Plaintiff's Statement at ¶14.

[20] Plaintiff's Statement at ¶¶10, 12.

assistant.[21] It was also a change for the worse for Ms. Lewandowski from the position's job description.[22]

Ms. Lewandowski's pay and benefits were not affected by her transfer to the Associate Provost's office.[23]

<u>Ms. Lewandowski is returned to the Dean's Office with diminished responsibilities</u>

In approximately August 2007, Ms. Lewandowski was transferred back to Assistant to the Dean of the School of Fine and Performing Arts under the new Dean, Eliza Nichols, who thus became Ms. Lewandowski's direct supervisor.[24] Defendant's choice to assign Ms. Lewandowski only menial, non-supervisory tasks continued after that transfer.[25] For example, Ms. Lewandowski was removed from supervising the student workers she had previously supervised and otherwise demoted from a position that defendant had previously regarded as on the same reporting level as the position of Associate Dean.[26]

Sometime during her first month of employment with defendant, Dean Nichols began keeping a log on Ms. Lewandowski.[27] Dean Nichols does not keep such logs on all her employees, and, when pressed as to why she was keeping such a log on Ms. Lewandowski after just a few days of having worked with her, Dean Nichols testified

---

[21]  Plaintiff's Statement at ¶¶11, 12, 13, 15.

[22]  Plaintiff's Statement at ¶12.

[23]  Joint Statement at ¶¶25, 26, 28.

[24]  Joint Statement at ¶¶31, 32.

[25]  Plaintiff's Response to Def's Statement at Additional Facts ¶26.

[26]  Plaintiff's Response to Def's Statement at Additional Facts ¶27.

[27]  Plaintiff's Response to Def's Statement at Additional Facts ¶16.

only that she felt she had a reason to do so.[28] In addition to keeping a log on Ms. Lewandowski, Dean Nichols also investigated Ms. Lewandowski's communications, interviewing individuals whom Ms. Lewandowski interacted with, including Department Chairs and Associate Dean Jim MacDonald.[29]

Ms. Lewandowski was concerned that she was being retaliated against, and just one week before defendant's termination of Ms. Lewandowski's employment, Assistant VP Griffin was supposedly "handling" Ms. Lewandowski's retaliation concerns.[30]

Ms. Lewandowski is fired the day before her FMLA leave

On October 17, 2007, which was the last day of work before Ms. Lewandowski was to have gone on a Family and Medical Leave Act leave for a hospital stay for knee surgery, Ms. Lewandowski was fired by her new supervisor, Dean Nichols, at approximately 11:00 A.M., which was approximately six hours before Ms. Lewandowski was to have left work for her FMLA leave that was to have begun the next day.[31]

Ms. Lewandowski's FMLA request had been made and approved approximately three weeks earlier, on September 25, 2007, when defendant had received from her a written request for an FMLA leave to begin on October 18, for "Hospital Care"; Ms. Lewandowski needed that hospital care to undergo knee surgery.[32]

---

[28]  Plaintiff's Response to Def's Statement at Additional Facts ¶¶17, 18.

[29]  Plaintiff's Response to Def's Statement at Additional Facts ¶¶19, 20.

[30]  Plaintiff's Response to Def's Statement at Additional Facts ¶23.

[31]  Joint Statement at ¶¶34, 39; Plaintiff's Statement at ¶¶17, 19, 20.

[32]  Joint Statement at ¶¶33-35; Plaintiff's Statement at ¶17.

Dean Nichols signed and approved Ms. Lewandowski's written FMLA request.[33] In addition, Dean Nichols later asked Ms. Lewandowski for the dates that she would be on leave, and, in response, Ms. Lewandowski reminded Dean Nichols of those dates.[34]

Assistant Vice President Griffin and Provost Steven Kapelke, who had been involved in Ms. Lewandowski's complaint of sexual harassment against Dean Lehrer, took part in defendant's decision to fire Ms. Lewandowski, and Assistant Vice President Griffin was present when Dean Nichols terminated Ms. Lewandowski's employment.[35]

<u>Defendant's witnesses' credibility problems and their interest in the outcome of this case</u>

Provost Steven Kapelke is responsible for disciplining defendant's Deans for sexual harassment, and the only instance in which Provost Kapelke has had to decide whether or not to discipline one of defendant's Deans for sexual harassment was Ms. Lewandowski's complaint to defendant of Dean Lehrer's behavior towards her.[36] Provost Kapelke's claims not to remember any details regarding Ms. Lewandowski's allegations of sexual harassment against Dean Lehrer, not to remember whether he read the report of Dean Lehrer's sexual harassment that defendant's Director of Human Resources had prepared at Assistant Vice President Griffin's request, and not to remember his own actions in deciding whether or not to discipline Dean Lehrer for his admitted sexual conduct towards Ms. Lewandowski.[37] Provost Kapelke's demeanor at his deposition was that of a slow and reluctant witness whose body language indicated

---

[33]    Joint Statement at ¶35.

[34]    Plaintiff's Statement at ¶18.

[35]    Plaintiff's Response to Def's Statement at Additional Facts ¶¶21, 22, 24.

[36]    Plaintiff's Response to Def's Statement at Additional Facts ¶¶5, 7.

[37]    Plaintiff's Response to Def's Statement at Additional Facts ¶¶8, 9, 10.

that he should not be believed.[38]

Defendant tells its supervisors and managers that if they are found to have retaliated against an employee for that employee's having complained of sexual harassment and/or for having requested FMLA leave, then the supervisor or manager could be demoted, have his or her pay cut, or even be fired.[39]

## Argument

I. **Because a reasonable jury could find that Ms. Lewandowski timely complained of sexual harassment, could find that defendant's transfer of Ms. Lewandowski to a boring, make-work job was an adverse action, could find that defendant's policy was not effective, and could find that Ms. Lewandowski's one additional dinner with Dean Lehrer was with defendant's encouragement and after Ms. Lewandowski had already been sexually harassed, summary judgment must be denied.**

As the Supreme Court stated:

> "An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee."

Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 at 765 (1998); see also, Faragher v. Boca Raton, 524 U.S. 775 (1998). In our case, a reasonable jury could easily find that Dean Lehrer was Ms. Lewandowski direct supervisor, with the power to fire her, to cut her pay, etc., and that the environment he created was hostile. Defendant therefore asserts the Faragher/Ellerth affirmative defense, which has:

> "two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing

---

[38]    Plaintiff's Response to Def's Statement at Additional Facts ¶11.

[39]    Defendant's Rule 56.1 Statement at ¶¶10-12; Joint Statement of Facts at ¶¶37, 38.

> behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."

Faragher, 524 U.S. 775 at 807 (emphasis added).

In our case, as a matter of law, defendant cannot establish the second necessary element because defendant admits – indeed, puts front and center – that Ms. Lewandowski complained promptly (the day after the incidents), following defendant's procedure. Because Ms. Lewandowski suffered being sexually harassed by her supervisor, which cannot be "unsuffered" even though she promptly complained, the alleged effectiveness of defendant's policy and the alleged reasonableness of its reaction go only to damages. See, EEOC Guidance: Vicarious Employer Liability for Unlawful Harassment by Supervisors [archive.eeoc.gov/policy/docs/harassment.html] (6/18/99). Ms. Lewandowski argued this extensively in her Memo Supporting Partial Motion for Summary Judgment (at pp. 8 - 10) and incorporates that argument here.

An independent reason that defendant cannot receive summary judgment on the Faragher/Ellerth affirmative defense is that that affirmative defense is available only if "no tangible employment action is taken". Faragher, 524 U.S. at 807. In our case, a reasonable jury could find that Ms. Lewandowski suffered a tangible employment action in being transferred to a job with "significantly diminished responsibilities", going from a job with many interesting and important responsibilities, reporting directly to the Dean, and being the major contact with Administration, the Dean, the chairs, etc., to a boring, "make-work" job, reporting to an assistant and doing menial busy-work, such as cleaning files, creating file folders, printing documents, and often having nothing at all to do. See, Sitar v. Indiana Dep't of Transp., 344 F.3d 720 at 728 (7th Cir. 2003).

Another independent reason that defendant cannot receive summary judgment on the Faragher/Ellerth affirmative defense is that a reasonable jury could find that defendant's policy was pretty much a joke, considering that Provost Steven Kapelke did not know whether or not Dean Lehrer's confession showed that he had sexually harassed Ms. Lewandowski and that the only consequences for Dean Lehrer was that an unsigned letter not on defendant's letterhead was allegedly placed in his file.

Finally, defendant's assertion that Ms. Lewandowski brought the sexual harassment on herself by going out to dinner with Dean Lehrer ignores that Ms. Lewandowski attended that one dinner because defendant itself encouraged her to attend and confront Dean Lehrer about his unwelcome, sexually-harassing behavior. Defendant also ignores that, when that dinner happened, Ms. Lewandowski had already been sexually harassed and that Ms. Lewandowski's attendance at that dinner does not magically make the earlier sexual harassment disappear. Thus, any issues on Ms. Lewandowski's attending that dinner go only to damages.

Therefore, the Faragher/Ellerth affirmative defense is not available to defendant for three independent reasons, any one of which is independently sufficient to defeat defendant's Motion for Summary Judgment. Because a reasonable jury could find all three, defendant's Motion for Summary Judgment must be denied.

## II. Because defendant's motive is itself a contested issue of fact, defendant's motion for summary judgment must be denied.

In addition, our case has an overarching issue of fact: defendant's motive in treating Ms. Lewandowski the way it did following her complaint of sexual harassment and her request for FMLA leave. Here, the Supreme Court case Hunt v. Cromartie,

546 U.S. 541 (1999), is especially instructive. Hunt was a re-districting case in which the parties had not contested each other's facts, and the District Court had entered summary judgment on those uncontested facts. Id. at 545, 549. Nevertheless, despite the uncontested factual record, the Supreme Court reversed summary judgment, because "motivation is itself a factual question". Id. at 549.

If motive is a factual question when, as in Hunt, the parties do not contest each other's facts, then motive is even more a factual question in a case like ours in which there is a lot of evidence from which a reasonable jury could infer defendant's animus, such as defendant's transferring Ms. Lewandowski to a much worse job, merely slapping Dean Lehrer on the wrist, putting Ms. Lewandowski under semi-surveillance, and firing Ms. Lewandowski the day before her FMLA leave was to have begun for an alleged reason that was extremely subjective.

In that regard, keeping a secret paper-trail (as Nichols did on Ms. Lewandowski), putting an employee under semi-surveillance (as defendant did to Ms. Lewandowski), and firing for vague and subjective reasons (as defendant did to Ms. Lewandowski) have all been held to be strongly suggestive of pretext. See, e.g., Harris v. Richards Mfg. Co., 511 F. Supp. 1193 at 1205 (W.D. Tenn 1981), aff'd in part and rev'd in part on other grounds, 675 F.2d 811 (6th Cir. 1982) (secret paper trail); Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913 at 921 (11th Cir. 1993), quoting Schlei & Grossman Employment Discrimination Law at 554 (2nd ed. 1983) (surveillance); Robinson v. PPG Indus., 23 F.3d 1159 at 1164 (7th Cir. 1994) (subjective reason such as "interpersonal skill" more susceptible to being pretextual). Thus, defendant's Motion for Summary Judgment must be denied.

**III.      The testimony of defendant's witnesses cannot be credited for purposes of granting defendant's Motion for Summary Judgment because Kapelke's testimony was inherently unbelievable and he was a slow and reluctant witness whose demeanor would permit the jury to disbelieve him, because the affidavit of a law-breaker as to his or her own good faith is not a legitimate basis for granting summary judgment, and because defendant's witnesses are interested witnesses whom a jury would not have to believe.**

The black-letter law is that, on summary judgment, the court "must disregard all evidence favorable to the moving party that the jury is not required to believe" Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 at 151 (2000) (emphasis added). And in deciding whether or not to believe a witness's testimony, the jury can take into account, among other things, "any interest, bias, or prejudice the witness may have". See, 7th Circuit Civil Pattern Jury Instruction 1.13 Testimony of Witnesses (Deciding What to Believe).

First, Kapelke's testimony was inherently unbelievable – he was in charge of disciplining Deans accused of sexual harassment, Ms. Lewandowski's complaint against Dean Lehrer was the only such incident in his tenure, and Kapelke remembered virtually nothing about it. That's about as believable as a Congressman or a Senator in the late 1990's remembering nothing about the impeachment of President Clinton. In addition, Kapelke's demeanor at his deposition was that of a slow and reluctant witness who should not be believed. A review of the video clips Ms. Lewandowski has submitted shows that a jury would be very justified in rejecting Kapelke's testimony based on his demeanor alone. In this regard, the Supreme Court has approved using video on summary judgment to determine what a reasonable jury could or could not believe. Scott v. Harris, ___ U.S. ___, 127 S. Ct. 1769 at 1774 - 1776 (2007).

Second, a jury would not have to believe defendant's own statements as to its own motives, and any inference that defendant has accurately described its own motives simply cannot be credited on summary judgment. See, e.g., Reeves, supra, 530 U.S. at 150 ("[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge"). Because an alleged violator of the law's own affidavit as to its own motives cannot be a "get-out-of-jail-free card", "the summary judgment standard is applied 'with added rigor in employment discrimination cases, where intent and credibility are crucial issues.'" Courtney v. Biosound, Inc., 42 F.3d 414 at 418 (7th Cir. 1994). See also, Loeb v. Textron, Inc., 600 F.2d 1003 at 1011, n.5 (1st Cir. 1979) (insufficient for employer "to offer vague, general averments of good faith") (ADEA); Dyer v. Community Memorial Hosp., 2006 WL 435721 at *11 (E.D. Mich. 2006) ("self-serving statement by the defendant's representative that no illegal discrimination animated the defendant's actions is insufficient to put the plaintiffs to their proofs at the summary judgment stage") (dictum).

Holding that an alleged law-breaker could avoid trial simply by presenting an affidavit of its own good faith has horrible implications across all areas of the law and has been uniformly rejected. See, e.g., Alexander v. Louisiana, 405 U.S. 625 at 632 (1972) ("affirmations of good faith" are "insufficient to dispel a prima facie case") (jury selection); Teamsters v. U.S., 431 U.S. 324 at 342, n. 24 (1977) (accord) (pattern and practice case); U.S. v. Flomenhoft, 86 C 1588, 1987 WL 7598 at *4. (N.D. Ill. 1987) aff'd 843 F.2d 500 (7th Cir. 1988) (refusing to credit testimony of allegedly innocent spouse in "innocent-spouse" tax case); U.S. v. N. 48 Feet of Lots 19 and 20 in Block 8, 138 F.3d

1268 at 1269 (8th Cir. 1998) (knowledge inferred in "innocent owner" drug-forfeiture).

Further, in our case, a reasonable jury would not have to believe any of the defendant's witnesses, because defendant tells its supervisors and managers that if they are found to have retaliated against an employee for that employee's having reported sexual harassment and/or for having requested FMLA leave, then the supervisor or manager could be demoted, have his or her pay cut, or even be fired. That means that all of defendant's witnesses have their pay, their jobs, and their careers at risk if Ms. Lewandowski wins this case. That is precisely the type of interest that a reasonable jury could take into account in determining whether or not to believe defendant's witnesses. See, 7th Circuit Civil Pattern Jury Instruction 1.13, supra.

Thus, because a reasonable jury would not have to believe the testimony of any of defendant's witnesses, the testimony of those witnesses cannot be credited for purposes of granting defendant's Motion for Summary Judgment. Therefore, defendant's Motion for Summary Judgment must be denied.

## Conclusion

For these reasons, defendant's Motion for Summary Judgment must be denied.

Lisa Lewandowski,
plaintiff,

By:   s/David L. Lee
Her attorney

**Proof of service**:  I, David L. Lee, an attorney, certify that this Memorandum in Opposition was served on defendant's attorney by e-mail on July 8, 2011.

David L. Lee, ARDC #1604422
LAW OFFICES OF DAVID L. LEE
53 W. Jackson Blvd., Suite 505
Chicago, IL  60604
312-347-4400
d-lee@davidleelaw.com

s/David L. Lee
David L. Lee