*In the United States District Court*
*for the Northern District of Illinois*
*Eastern Division*

| | |
|---|---|
| Lisa Lewandowski,<br><br>       plaintiff,<br><br>– v –<br><br>Columbia College Chicago, an Illinois not-for-profit corporation,<br><br>       defendant. | **#09 CV 04949**<br><br>Judge Manning<br><br>Magistrate Judge Kim<br><br>**Jury demanded** |

## Plaintiff's Rule 56.1(b)(3) Statement

Plaintiff Lisa Lewandowski files this Rule 56.1 (b)(3) Statement, consisting of 1) Additional Facts Requiring the Denial of Summary Judgment and 2) Response to Moving Party's Statement:

## Additional Facts Requiring the Denial of Summary Judgment

Defendant knew that Ms. Lewandowski was not inviting towards Lehrer

1.       Defendant considered Ms. Lewandowski's conversations with its Human Resources Departments (as detailed in the document entitled "Complaint by Lisa Lewandowski, Assistant to the Dean, about inappropriate behavior by Leonard Lehrer, Dean of School of Fine and Performing Arts and her immediate supervisor") to be a report of sexual harassment.  [Deposition Transcript of Patricia Olalde at p. 9 line 8 through line 11, attached as Exhibit D to plaintiff's Rule 56.1 Statement.]

2.       In defendant's investigation of Ms. Lewandowski's complaint of sexual harassment, Associate Dean MacDonald told defendant that Ms. Lewandowski's attitude or body language towards Dean Lehrer was never inviting but always

stern. [Deposition Transcript of Patricia Olalde at p. 12 line 18 through p. 13 line 14, attached as Exhibit D to plaintiff's Rule 56.1 Statement; Deposition Exhibit 4 which is also Exhibit E to Defendant's Rule 56.1 Statement at p. 3].

<u>Defendant encourages Ms. Lewandowski to socialize with Dean Lehrer</u>

3.        Around October 11, 2006, in her meeting with defendant's human resources department when Ms. Lewandowski reported that Dean Lehrer was being "too friendly", Ms. Lewandowski told defendant's human resources department that she and Dean Lehrer would be having dinner together that evening. [Deposition Transcript of Lisa Lewandowski at p. 142 line 14 through p. 144 line 3, attached as Exhibit F to this Rule 56.1(b)(3) Statement; Deposition Transcript of Patricia Olalde at p. 12 line 18 through p. 13 line 2, attached as Exhibit D to plaintiff's Rule 56.1 Statement; Deposition Exhibit 4 which is also Exhibit E to Defendant's Rule 56.1 Statement which states "they were going to have dinner after work and she would talk to him."]

4.        Defendant encouraged Ms. Lewandowski to discuss with Dean Lehrer his "too friendly" behavior during this dinner and checked-in with Ms. Lewandowski after the dinner to see how her conversation with Dean Lehrer went. [Deposition Exhibit 4 which is also Exhibit E to Defendant's Rule 56.1 Statement which states "they were going to have dinner after work and she would talk to him"; E-mail exchange attached as Exhibit 76, admitted genuine at defendant's Answer to Plaintiff's Requests for Admissions at ¶2, attached as Exhibit C to plaintiff's Rule 56.1 Statement; Deposition Transcript of Lisa Lewandowski at p. 142 line 14 through p. 144 line 3, attached as Exhibit F to this Rule 56.1(b)(3) Statement;

Deposition Transcript of Patricia Olalde at p. 12 line 18 through p. 13 line 2
attached as Exhibit D to plaintiff's Rule 56.1 Statement.]

Defendant's decision-maker's professed lack of memory

5.        Provost Steven Kapelke is responsible for disciplining defendant's Deans
for, among other things, sexual harassment.  [Deposition Transcript of Steven
Kapelke at p. 20 line 13 through line 21, attached as Exhibit G to this Rule
56.1(b)(3) Statement.]

6.        Provost Kapelke cannot remember whether or not the following
statements or actions would be considered sexual harassment according to
defendant's anti-sexual-harassment training:

- A supervisor telling a subordinate that he had strong feelings for her and that he had to act upon them;

- A supervisor telling a subordinate that he wanted to have an affair with her;

- A supervisor telling a subordinate that he wanted her to have his children;

- A supervisor telling a subordinate that he wanted to wake up in her bed; and

- A supervisor telling a subordinate that he wanted to wake up in her arms.

[Deposition Transcript of Steven Kapelke at p. 16 line 5 through p. 17 line 8,
attached as Exhibit G to this Rule 56.1(b)(3) Statement.]

7.        The only instance in which Provost Kapelke has had to decide whether or
not to discipline one of defendant's Deans for sexual harassment was
Ms. Lewandowski's complaint to defendant of Dean Lehrer's behavior towards

her.  [Deposition Transcript of Steven Kapelke at p. 22 line 6 through line 21, attached as Exhibit G to this Rule 56.1(b)(3) Statement.]

8.  Provost Kapelke's cannot recall any details regarding Ms. Lewandowski's allegations of sexual harassment against Dean Lehrer.  [Deposition Transcript of Steven Kapelke at p. 6 line 2 through p. 10 line 25, attached as Exhibit G to this Rule 56.1(b)(3) Statement.]

9.  Provost Kapelke's cannot recall his own actions in deciding whether or not to discipline Dean Lehrer for his admitted sexual conduct towards Ms. Lewandowski.  [Deposition Transcript of Steven Kapelke at p. 6 line 2 through p. 10 line 25, attached as Exhibit G to this Rule 56.1(b)(3) Statement.]

10.  Provost Kapelke doesn't know whether he ever read the report that the Director of Human Resources prepared at Assistant Vice President Griffin's request.  [Deposition Transcript of Steven Kapelke at p. 6 line 2 through line 11, attached as Exhibit G to this Rule 56.1(b)(3) Statement; Deposition Exhibit 4 which is also Exhibit E to Defendant's Rule 56.1 Statement.]

11.  Provost Kapelke's demeanor at his deposition was that of a slow and reluctant witness whose body language indicated that he should not be believed.  [Video clips of deposition of Steven Kapelke, attached as Exhibit H to this Rule 56.1(b)(3) Statement.]

Defendant's alleged slap-on-the-wrist of Dean Lehrer

12.  Despite defendant's understanding that Ms. Lewandowski's conversations with defendant's Human Resources Department were reports of sexual harassment, defendant never concluded whether Dean Lehrer telling

-4-

Ms. Lewandowski that 1) he has strong feelings for her and has to act on them, that 2) he was attracted to her, that 3) she was his type, tall and slender, that 4) he wanted to have an affair with her, that 5) he wanted her to have his children, that 6) he wanted to have "my sperm extracted" and used to impregnate her, or that 7) he wanted to draw her in the nude, was sexual harassment. [Defendant's Memorandum in Support of its Motion for Summary Judgment at p. 9, which characterizes defendant's investigation of Ms. Lewandowski's complaint of sexual harassment as "inconclusive".]

13.     Defendant took no actions against Dean Lehrer as a result of Ms. Lewandowski's complaint of sexual harassment except for allegedly placing a letter in Dean Lehrer's personnel file. [Deposition Transcript of Steven Kapelke at p. 13 line 2 though line 12, attached as Exhibit G to this Rule 56.1(b)(3) Statement, and Kapelke Deposition Exhibit 17 which is also Exhibit G to Defendant's Rule 56.1 Statement.]

14.     The letter defendant allegedly placed a letter in Dean Lehrer's personnel file as a result of Ms. Lewandowski's complaint of sexual harassment against him is an unsigned letter and is not on defendant's letterhead. [Kapelke Deposition Exhibit 17, which is also Exhibit G to Defendant's 56.1 Statement.]

<u>Defendant keeps tabs on Ms. Lewandowski</u>

15.     Soon after Ms. Lewandowski filed a Charge of Discrimination against defendant and hired a private attorney, defendant began instructing its employees to copy Provost Kapelke and Assistant Vice President Griffin on communications with Ms. Lewandowski, even on standard, form

communications. [Defendant's Answers to Plaintiff's Requests for Admissions at ¶123, attached as Exhibit C to plaintiff's Rule 56.1 Statement, and Exhibit 84 to Plaintiff's Requests for Admissions, attached as Exhibit 84 to this Rule 56.1(b)(3) Statement, admitted genuine at defendant's Answers to Plaintiff's Requests for Admissions at ¶2.]

16.     Sometime during her first month of employment with defendant, Dean Nichols began keeping a contemporaneous log on Ms. Lewandowski. [ Deposition Transcript of Dean Nichols at p. 70 line 6 through p. 71 line 6, attached as Exhibit E to plaintiff's Rule 56.1 Statement.]

17.     When pressed as to why she was keeping a log on Ms. Lewandowski after just a few days of having worked with Ms. Lewandowski, Dean Nichols testified that in her first month of employment with Ms. Lewandowski, she felt she had a reason to keep a log on Ms. Lewandowski. [Deposition Transcript of Dean Nichols at p. 74 line 9 through line 19, attached as Exhibit E to plaintiff's Rule 56.1 Statement.]

18.     Dean Nichols testified that she does not keep such contemporaneous logs on all her employees but only on those employees on whom she feels she has a reason to keep such a log. [Deposition Transcript of Dean Nichols at p. 74 line 9 through line 19, attached as Exhibit E to plaintiff's Rule 56.1 Statement.]

19.     Apart from this logging of Ms. Lewandowski's actions and behaviors during her first few months of employment as Dean of the School of Fine and Performing Arts, Dean Nichols also investigated Ms. Lewandowski's communications to her. [Deposition Transcript of Dean Nichols at p. 38 lines 10

through 22, p. 43 line 14 through p. 44 line 9, p. 46 line 7 through p. 47 line 25, attached as Exhibit E to plaintiff's Rule 56.1 Statement; Defendant's Rule 56.1 Statement at ¶45 and ¶48; Joint Statement at ¶36.]

20.      Dean Nichols interviewed individuals that Ms. Lewandowski interacted with, including Department Chairs and Jim McDonald.  [Deposition Transcript of Dean Nichols at p. 38 lines 10 through 22, p. 43 line 14 through p. 44 line 9, p. 46 line 7 through p. 47 line 25, attached as Exhibit E to plaintiff's Rule 56.1 Statement; Response to Defendant's ¶¶45, 48, infra.]

Defendant's termination of Ms. Lewandowski's employment

21.      Defendant's Director of Human Resources testified that Assistant Vice President Griffin and Provost Steven Kapelke took part in defendant's decision to fire Ms. Lewandowski.  [Deposition Transcript of Patricia Olalde at p. 30 lines 14 through 25, attached as Exhibit D to plaintiff's Rule 56.1 Statement.]

22.      Defendant's Director of Human Resources testified that Assistant Vice President Griffin had been responsible for investigating Ms. Lewandowski's complaints of sexual harassment against Dean Lehrer, and that Assistant Vice President Griffin had informed Provost Kapelke of those complaints of sexual harassment.  [Deposition Transcript of Patricia Olalde at p. 12 line 18 through p. 13 line 14, attached as Exhibit D to plaintiff's Rule 56.1 Statement; and Deposition Exhibit 4 which is also Exhibit E to Defendant's Rule 56.1 Statement.]

23.      Defendant's Director of Human Resources testified that just one week prior to defendant's termination of Ms. Lewandowski's employment, Assistant Vice President Griffin was "handling" Ms. Lewandowski's concerns about

defendant's retaliation against her. [Deposition Transcript of Patricia Olalde at p. 20 line 3 through line 21, attached as Exhibit D to plaintiff's Rule 56.1 Statement and Deposition Exhibit 10, attached as Exhibit I to this Rule 56.1(b)(3) Statement.]

24.     Assistant Vice President Griffin was present when Dean Nichols terminated Ms. Lewandowski's employment. [Deposition Transcript of Lisa Lewandowski at p. 250 line 12 through p. 251 through line 22, attached as Exhibit F to this Rule 56.1(b)(3) Statement.]

Defendant's transfers of Ms. Lewandowski to boring, make-work jobs

25.     After Ms. Lewandowski filed a Charge of Discrimination and hired an attorney, Associate Provost Foley wrote, "We need to get together sometime this week to talk about what routine tasks (if any) to assign to Lisa while she is here." [Declaration of Ms. Lewandowski at ¶18, and Exhibit A-6 to the Declaration, attached as Exhibit A to plaintiff's Rule 56.1 Statement, admitted genuine in defendant's Answer to Plaintiff's Requests for Admissions at ¶2, attached as Exhibit C to plaintiff's Rule 56.1 Statement.]

26.     Defendant's decision to assign to Ms. Lewandowski only menial, non-supervisory tasks continued after defendant transferred Ms. Lewandowski back to her position as Assistant to the Dean of the School of Fine and Performing Arts. [Deposition Transcript of Lisa Lewandowski at p. 280 line 23 through p. 281 line 17, attached as Exhibit F to this Rule 56.1(b)(3) Statement. Deposition Transcript of Dean Nichols at p. 21 line 4, p. 27 line 17 through p. 28 line 6, p. 38 line 10 through line 12, and p. 79 line 23 through p. 80 line 3, attached as Exhibit

E to plaintiff's Rule 56.1 Statement.]

27.        When Ms. Lewandowski reported to Dean Nichols, Dean Nichols removed

from Ms. Lewandowski the supervision of the student workers whom

Ms. Lewandowski previously supervised and otherwise demoted

Ms. Lewandowski from a position that defendant had previously regarded as on

the same reporting level as the position of Associate Dean.  [Deposition

Transcript of Dean Nichols at p. 21 line 4, p. 79 line 23 through p. 80 line 3,

attached as Exhibit E to plaintiff's Rule 56.1 Statement; School of Fine &

Performing Arts Dean's Office Organizational Chart produced by defendant as

D00003, attached as Exhibit J to this Rule 56.1(b)(3) Statement.]

<u>Other facts</u>

28.        Ms. Lewandowski incorporates the parties Joint Statement of Facts and

her Rule 56.1 Statement in support of her Motion for Partial Summary Judgment

on Liability.

## **Response to Moving Party's Statement**

1.        The plaintiff began her employment with Columbia College Chicago, a

not-for-profit institution located in Chicago, Illinois, around 1998. (Plaintiff's

Amended Complaint, Exhibit A, para. 4)

      <u>Response:</u>       Agree.

2.        The plaintiff began working as assistant to Leonard Lehrer, Dean of

Columbia's School of Fine and Performing Arts, in May 2005.  (Lewandowski

deposition transcript, Exhibit B, p. 46, ln. 19-21)

      <u>Response:</u>       Agree.

3.          The plaintiff's direct supervisor was Dean Lehrer.  (Lewandowski, Exhibit B, p. 46, ln. 22-24)

    <u>Response</u>:          Agree.

4.          Beginning in or around January 2006, Dean Lehrer began using two canes.  (Lewandowski, Exhibit B, p. 104, ln. 14-15)

    <u>Response</u>:          Disagree that Dean Lehrer used two canes from January 2006 onward.  Agree that at some point while Ms. Lewandowski reported to Dean Lehrer, he used two canes.  <u>See</u> Deposition Transcript of Lisa Lewandowski at p. 104 line 7 through p. 105 line 6, attached as Exhibit F to this Rule 56.1(b)(3) Statement.

5.          The plaintiff initiated hugs with Dean Lehrer on more than one occasion. (Lewandowski, Exhibit B, p. 137, ln. 24; p. 138, ln. 1-7)

    <u>Response</u>:          Agree.

6.          The plaintiff initiated kisses with Dean Lehrer on more than one occasion. (Lewandowski, Exhibit B, p. 138, ln. 24; p. 139, ln. 1-13)

    <u>Response</u>:          The citation supports only that Ms. Lewandowski may have initiated a kiss on the cheek with Dean Lehrer "to say goodbye, feel better at the hospital", etc.; deny any implication otherwise.

7.          At the time the plaintiff brought her complaint to Columbia's Office of Human Resources, Columbia had a written policy prohibiting harassment based on sex or any other characteristic protected by state, federal, or local law.

(Columbia College Chicago Anti-Harassment Policy, Exhibit C)

Response:         Agree.

8.         Columbia provides sexual harassment workshops for chairs, department heads, supervisors and deans.  (Olalde deposition transcript, Exhibit D, p. 22, ln. 18-24)

Response:         Disagree that Dean Lehrer attended these workshops. Agree that defendant has testified that it provided sexual harassment workshops.  See Defendant's Answers to Request for Admissions at ¶¶72, 73, 74, and 75, attached as Exhibit C to plaintiff's Rule 56.1 Statement, and defendant's Amended Answers to Select Requests for Admission at ¶¶72, 74, and 75, attached as Exhibit K to this Rule 56.1(b)(3) Statement in which defendant states "After reasonable inquiry, the information known by the defendant and readily obtained by it is insufficient to enable the defendant to admit or deny the allegations.... Despite a search of its records, the defendant is unable to admit or deny the allegations."

9.         Sexual harassment workshops were given in 2006.  (Olalde, Exhibit D, p. 22, ln. 25; p. 23, ln. 1)

Response:         Disagree that Dean Lehrer attended these workshops. Agree that defendant has testified that it provided sexual harassment workshops were given in 2006.  See Defendant's Answers to Request for Admissions at ¶¶72, 73, 74, and 75,

> attached as Exhibit C to plaintiff's Rule 56.1 Statement, and
> defendant's Amended Answers to Select Requests for
> Admission at ¶¶72, 74, and 75, attached as Exhibit K to this
> Rule 56.1(b)(3) Statement, in which defendant states "After
> reasonable inquiry, the information known by the defendant
> and readily obtained by it is insufficient to enable the
> defendant to admit or deny the allegations.... Despite a
> search of its records, the defendant is unable to admit or
> deny the allegations.

10.      Deans and department chairs are told they cannot retaliate against employees for asserting their rights under federal law. (Olalde, Exhibit D, p. 28, ln. 8-12)

      <u>Response</u>:      Agree.

11.      Deans and department chairs at Columbia are told that they may suffer adverse consequences if they retaliate against employees for exercising their rights under federal law. (Olalde, Exhibit D, p. 28, ln. 13-18)

      <u>Response</u>:      Agree.

12.      Those adverse consequences can include verbal or written reprimands and termination. (Olalde, Exhibit D, p. 29, ln. 7-11)

      <u>Response</u>:      Agree.

13.      After the plaintiff reported Lehrer's conduct to Olalde, she had a social meal with him. (Lewandowski, Exhibit B, p. 147, ln. 13-19)

      <u>Response</u>:      Agree that Ms. Lewandowski informed defendant of

her social meal before it was to occur and that defendant did
not discourage Ms. Lewandowski from attending but
encouraged her to discuss with Dean Lehrer his
inappropriate behavior at this social meal and that defendant
then emailed Ms. Lewandowski the following day to see how
the dinner with Dean Lehrer went. See Additional Facts,
supra, at ¶¶3, 4.

14.        After the plaintiff reported Lehrer's conduct to Olalde, she shared a cab
with Lehrer to her residence and permitted him to enter her apartment.
(Lewandowski, Exhibit B, p. 159, ln. 1-21)

            Response:            Agree.  This was at the encouragement of defendant,
                                 whom Ms. Lewandowski had informed of her social meal
                                 before it was to occur and who encouraged Ms. Lewandowski
                                 to discuss with Dean Lehrer his inappropriate behavior at
                                 this social meal.  Defendant then e-mailed Ms. Lewandowski
                                 the following day to see how the dinner with Dean Lehrer
                                 had gone. See Additional Facts, supra, at ¶¶3, 4.

15.        Olalde told the plaintiff that Jim MacDonald reported to Olalde that the
plaintiff had complained to him about Lehrer's conduct.  (Lewandowski, Exhibit
B, p. 164, ln. 10-13)

            Response:            Agree.

16.        As part of her investigation, Olalde interviewed Dean Lehrer and
questioned him about the plaintiff's allegations.  (Interview notes of Patricia

Olalde, Exhibit E)

      <u>Response</u>:        Agree.

17.        During his interview with Olalde, Lehrer did not deny that he hade made the statements the plaintiff attributed to him but he expressed a belief that the plaintiff shared his feelings. (Olalde interview notes, Exhibit E)

      <u>Response</u>:        Agree.

18.        After returning from Europe, Kapelke called a meeting in his office with Lehrer and gave him a letter of reprimand. (Kapelke deposition transcript, Exhibit F, p. 37, ln. 1-3, 12-14, 21-22; Letter from Kapelke to Lehrer, Exhibit G)

      <u>Response</u>:        Disagree. The alleged "letter of reprimand" is not signed and not on defendant's letterhead. <u>See</u>, Additional Facts, <u>supra</u>, at ¶¶12 - 14. Object to use of Kapelke's testimony in support of defendant's Motion for Summary Judgment, as Kapelke has an interest in not being found to have violated federal law in his treatment of Ms. Lewandowski, because if he did violate federal law in his treatment of Ms. Lewandowski, he would be liable to being disciplined up to and including being fired, and is thus an interested witness whose testimony cannot be considered in support of defendant's Motion for Summary Judgment. <u>See</u>, ¶¶10 - 12, <u>supra</u>; <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133 at 151 (2000), 7th Circuit Pattern Jury Instruction 1.13 Testimony of Witnesses (Deciding What to

Believe).

19. During their meeting, Lehrer told Kapelke that he believed the plaintiff shared his feelings because they were affectionate with each other and the plaintiff had initiated hugs with him.  (Kapelke, Exhibit F, p. 38, ln. 1-7, 15-19)

  <u>Response</u>:  Disagree.  Dean Lehrer did not deny Ms. Lewandowski's allegations of sexual harassment. <u>See</u> p. 4 of Deposition Exhibit 4 which is also Exhibit E to Defendant's Rule 56.1 Statement; Deposition Transcript of Patricia Olalde at p. 12 line 18 through p. 13 line 2, attached as Exhibit D to plaintiff's Rule 56.1 Statement.  Object to use of Kapelke's testimony in support of defendant's Motion for Summary Judgment, as Kapelke has an interest in not being found to have violated federal law in his treatment of Ms. Lewandowski, because if he did violate federal law in his treatment of Ms. Lewandowski, he would be liable to being disciplined up to and including being fired, and is thus an interested witness whose testimony cannot be considered in support of defendant's Motion for Summary Judgment.  <u>See</u>, ¶¶10 - 12, <u>supra</u>; <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133 at 151 (2000), 7th Circuit Pattern Jury Instruction 1.13 Testimony of Witnesses (Deciding What to Believe).

20. Steven Kapelke was the individual who decided to temporarily transfer the

plaintiff from the Dean's office to become assistant to Associate Provost Anne
Foley. (Kapelke, Exhibit F, p. 29, ln. 14-20)

> Response: Object to use of Kapelke's testimony in support of
> defendant's Motion for Summary Judgment, as Kapelke has
> an interest in not being found to have violated federal law in
> his treatment of Ms. Lewandowski, because if he did violate
> federal law in his treatment of Ms. Lewandowski, he would
> be liable to being disciplined up to and including being fired,
> and is thus an interested witness whose testimony cannot be
> considered in support of defendant's Motion for Summary
> Judgment. See, ¶¶10 - 12, supra; Reeves v. Sanderson
> Plumbing Products, Inc., 530 U.S. 133 at 151 (2000), 7th
> Circuit Pattern Jury Instruction 1.13 Testimony of Witnesses
> (Deciding What to Believe).

21.     After the plaintiff's report of Lehrer's conduct, Lehrer never said anything
to the plaintiff that was offensive. (Lewandowski, Exhibit B, p. 169, ln. 19-24)

> Response: Disagree. After Ms. Lewandowski reported Dean
> Lehrer's inappropriate conduct to defendant's Human
> Resources department around October 11, 2006, Dean
> Lehrer confessed to Ms. Lewandowski his attraction to her.
> See Deposition Exhibit 4 which is also Exhibit E to
> Defendant's Rule 56.1 Statement; See Deposition Transcript
> of Patricia Olalde at p. 12 line 18 through p. 13 line 2,

attached as Exhibit D to plaintiff's Rule 56.1 Statement.

22.        After the plaintiff's report of Lehrer's conduct, Columbia did not permit the plaintiff and Lehrer to be alone together.  (Lewandowski, Exhibit B, p. 170, ln. 3-8)

               <u>Response</u>:        Disagree.  After Ms. Lewandowski reported Dean Lehrer's inappropriate conduct to defendant's Human Resources department around October 11, 2006, defendant encouraged Ms. Lewandowski to attend a previously-scheduled social meal with Dean Lehrer and to discuss with Dean Lehrer his inappropriate behavior at that social meal. Defendant then e-mailed Ms. Lewandowski the following day to see how the dinner with Dean Lehrer had gone.  <u>See</u>, Additional Facts, <u>supra</u>, at ¶¶3, 4.

23.        In December 2006, the plaintiff was offered a transfer to the Associate Provost's office.  (Lewandowski, Exhibit B, p. 174, ln. 17-20)

               <u>Response</u>:        Agree.

24.        The offer to transfer was communicated to the plaintiff by Stephanie Griffin and Anne Foley, the Associate Provost.  (Lewandowski, Exhibit B, p. 174, ln. 21-23)

               <u>Response</u>:        Agree.

25.        The position of Associate Provost was a position of greater authority than the position held by Dean Lehrer.  (Lewandowski, Exhibit B, p. 7-11)

               <u>Response</u>:        Agree (but the citation is incorrect).

26.        The hours worked by the plaintiff as Assistant to the Associate Provost were the same as those she worked when she was assistant to Dean Lehrer. (Lewandowski, Exhibit B, p. 177, ln. 23-24; p. 178, ln. 1-2)

     Response:          Agree.

27.        The plaintiff believed that Anne Foley's office was a fine working environment and she had no problem working there. (Lewandowski, Exhibit B, p. 185, ln. 12-14)

     Response:          Agree that it was a fine working environment and that Ms. Lewandowski had no problems working there. Disagree with any implication that the job was comparable to Ms. Lewandowski's prior position. See, Additional Facts, supra, at ¶¶25, 26; See Plaintiff's 56.1 Statement in Support of her Motion for Partial Summary Judgment on Liability at ¶¶5 - 15.

28.        In August 2007, the plaintiff returned to the Dean's office to work as assistant to the new Dean, Eliza Nichols. (Lewandowski, Exhibit B, p. 193, ln. 3-6, 10-14)

     Response:          Agree.

29.        After the plaintiff returned to her position in the Dean's office she was permitted to order a new computer for herself and that computer arrived for her use. (Lewandowski, Exhibit B, p. 197, ln. 13-24; p. 198, ln. 1)

     Response:          Agree.

30.        While the plaintiff was waiting for the arrival of her new computer, she

was given the use of another computer.  (Lewandowski, Exhibit B, p. 198, ln. 2-13)

> Response:       Agree that defendant gave Ms. Lewandowski a computer that had networking problems and that did not function properly. <u>See</u> Deposition Transcript of Lisa Lewandowski at p. 196 line 2 through 17, attached as Exhibit F to this Rule 56.1(b)(3) Statement.

31.       The plaintiff does not know what knowledge, if any, Nichols had regarding the plaintiff's complaint against Lehrer.  (Lewandowski, Exhibit B, p. 209, ln. 18-23)

> Response:       Agree.

32.       Dean Nichols told the plaintiff that she was terminating her employment. (Lewandowski, Exhibit B, p. 251, ln. 11-19

> Response:       Agree.

33.       The plaintiff believes that efforts were made by Columbia as documented in the June 27, 2006, correspondence from Stephanie Griffin regarding harassing emails sent to the plaintiff.  (Lewandowski, Exhibit B, p. 275, ln. 5-24; p. 276, ln. 1-3)

> Response:       Agree.

34.       The plaintiff felt that Dean Nichols could be unhappy regarding her performance.  (Lewandowski, Exhibit B, p. 280, ln. 12-13)

> Response:       Agree that one week before defendant terminated her employment, Ms. Lewandowski wrote to defendant's Human

Resources department with concerns about Dean Nichols's perceptions about her employment with defendant but disagree with the implication that Ms. Lewandowski believed her performance to be inadequate.  See Exhibit 100 to this Rule 56.1(b)(3) Statement in which Ms. Lewandowski writes: "My concern is Eliza and her perception as to why and how I have moved and my performance related to these moves." Defendant has admitted Exhibit 100 is a genuine document in its Answers to Plaintiff's Requests for Admissions at ¶2, attached as Exhibit C to plaintiff's Rule 56.1 Statement.  See Deposition Transcript of Lisa Lewandowski at p. 279 line 18 through p. 281 line 17, attached as Exhibit F to this Rule 56.1(b)(3) Statement.

35.  The plaintiff does not know why Allison Ratliff was re-assigned to report to James MacDonald when Eliza Nichols took the Dean's position.  (Lewandowski, Exhibit B, p. 282, ln. 17-24; p. 283, ln. 1-3)

Response:  Agree that Dean Nichols rearranged the structure of the Dean's Office when she began her employment with defendant and that Dean Nichols never gave to Ms. Lewandowski a document detailing Ms. Lewandowski's job duties and responsibilities in this newly-structured office. See Answers to Defendant's Interrogatories at ¶18, attached as Exhibit L to this Rule 56.1(b)(3) Statement.

36.        Nichols approved the plaintiff's request for FMLA leave. (Nichols

deposition transcript, Exhibit H, p. 13, ln. 14-15; p. 14, ln. 16-18)

       <u>Response</u>:        Agree.

37.        No one told Nichols that the plaintiff had complained about the former

Dean Lehrer. (Nichols, Exhibit H, p. 17, ln. 9-11)

       <u>Response</u>:        Disagree and object to use of Nichols's testimony in

support of defendant's Motion for Summary Judgment, as

Nichols has an interest in not being found to have violated

federal law in her treatment of Ms. Lewandowski, because if

she did violate federal law in her treatment of

Ms. Lewandowski, she would be liable to being disciplined

up to and including being fired, and is thus an interested

witness whose testimony cannot be considered in support of

defendant's Motion for Summary Judgment. <u>See</u>, ¶¶10 - 12,

<u>supra</u>; Joint Statement of Facts at ¶¶37, 38; <u>Reeves v.

Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133 at 151

(2000), 7th Circuit Pattern Jury Instruction 1.13 Testimony of

Witnesses (Deciding What to Believe).

38.        Nichols had no knowledge regarding the plaintiff's complaints of improper

conduct by Dean Lehrer. (Nichols, Exhibit H, p. 84, ln. 20-23)

       <u>Response</u>:        Disagree and object to use of Nichols's testimony in

support of defendant's Motion for Summary Judgment, as

Nichols has an interest in not being found to have violated

federal law in her treatment of Ms. Lewandowski, because if she did violate federal law in her treatment of Ms. Lewandowski, she would be liable to being disciplined up to and including being fired, and is thus an interested witness whose testimony cannot be considered in support of defendant's Motion for Summary Judgment. See, ¶¶10 - 12, supra; Joint Statement of Facts at ¶¶37, 38; Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 at 151 (2000), 7th Circuit Pattern Jury Instruction 1.13 Testimony of Witnesses (Deciding What to Believe).

39.     After Nichols assumed the Dean position, she met with the plaintiff to explain to her what her expectations were. (Nichols, Exhibit H, p. 27, ln. 16-20)

Response:          Agree that Dean Nichols met with Ms. Lewandowski but disagree that Dean Nichols kept the majority of her meetings with Ms. Lewandowski. See Answers to Defendant's Interrogatories at¶¶ 13 and 18, attached as Exhibit L to this Rule 56.1(b)(3) Statement. Disagree as to the remainder and object to use of Nichols's testimony in support of defendant's Motion for Summary Judgment, as Nichols has an interest in not being found to have violated federal law in her treatment of Ms. Lewandowski, because if she did violate federal law in her treatment of Ms. Lewandowski, she would be liable to being disciplined

-22-

up to and including being fired, and is thus an interested witness whose testimony cannot be considered in support of defendant's Motion for Summary Judgment. <u>See</u>, ¶¶10 - 12, <u>supra</u>; Joint Statement of Facts at ¶¶37, 38; <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133 at 151 (2000), 7th Circuit Pattern Jury Instruction 1.13 Testimony of Witnesses (Deciding What to Believe).

40.     Nichols wanted an assistant who would truly assist her rather than making decisions for her. (Nichols, Exhibit H, p. 27, ln. 23-25)

<u>Response</u>:     Agree that Dean Nichols met with Ms. Lewandowski but disagree that Dean Nichols kept the majority of her meetings with Ms. Lewandowski. <u>See</u> Answers to Defendant's Interrogatories at¶¶ 13 and 18, attached as Exhibit L to this Rule 56.1(b)(3) Statement. Disagree as to the remainder and object to use of Nichols's testimony in support of defendant's Motion for Summary Judgment, as Nichols has an interest in not being found to have violated federal law in her treatment of Ms. Lewandowski, because if she did violate federal law in her treatment of Ms. Lewandowski, she would be liable to being disciplined up to and including being fired, and is thus an interested witness whose testimony cannot be considered in support of defendant's Motion for Summary Judgment. <u>See</u>, ¶¶10 - 12,

supra; Joint Statement of Facts at ¶¶37, 38; Reeves v.

Sanderson Plumbing Products, Inc., 530 U.S. 133 at 151

(2000), 7th Circuit Pattern Jury Instruction 1.13 Testimony of

Witnesses (Deciding What to Believe).

41.      Nichols wanted the plaintiff to do things according to her assignments to

her.  (Nichols, Exhibit H, p. 27, ln. 25; p. 28, ln. 1-3)

Response:      Agree that Dean Nichols gave Ms. Lewandowski

assignments.  Disagree as to the remainder and object to use

of Nichols's testimony in support of defendant's Motion for

Summary Judgment, as Nichols has an interest in not being

found to have violated federal law in her treatment of

Ms. Lewandowski, because if she did violate federal law in

her treatment of Ms. Lewandowski, she would be liable to

being disciplined up to and including being fired, and is thus

an interested witness whose testimony cannot be considered

in support of defendant's Motion for Summary Judgment.

See, ¶¶10 - 12, supra; Joint Statement of Facts at ¶¶37, 38;

Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133

at 151 (2000), 7th Circuit Pattern Jury Instruction 1.13

Testimony of Witnesses (Deciding What to Believe).

42.      Nichols told the plaintiff that she would communicate directly with the

Department Chairs and that she did not want the plaintiff to communicate with

the Chairs unless Nichol asked her to do so.  (Lewandowski, Exhibit B, p. 212, ln.

15-21; Nichols, p. 38, ln. 10-12)

Response:      Disagree and object to use of Nichols's testimony in support of defendant's Motion for Summary Judgment, as Nichols has an interest in not being found to have violated federal law in her treatment of Ms. Lewandowski, because if she did violate federal law in her treatment of Ms. Lewandowski, she would be liable to being disciplined up to and including being fired, and is thus an interested witness whose testimony cannot be considered in support of defendant's Motion for Summary Judgment. See, ¶¶10 - 12, supra; Joint Statement of Facts at ¶¶37, 38; Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 at 151 (2000), 7th Circuit Pattern Jury Instruction 1.13 Testimony of Witnesses (Deciding What to Believe).

43.      After instructing the plaintiff not to communicate directly with the Department Chairs, Nichols learned that the plaintiff had done so.  (Nichols, Exhibit H, p. 38, ln. 12-14)

Response:      Disagree and object to use of Nichols's testimony in support of defendant's Motion for Summary Judgment, as Nichols has an interest in not being found to have violated federal law in her treatment of Ms. Lewandowski, because if she did violate federal law in her treatment of Ms. Lewandowski, she would be liable to being disciplined

up to and including being fired, and is thus an interested witness whose testimony cannot be considered in support of defendant's Motion for Summary Judgment. <u>See</u>, ¶¶10 - 12, <u>supra</u>; Joint Statement of Facts at ¶¶37, 38; <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133 at 151 (2000), 7th Circuit Pattern Jury Instruction 1.13 Testimony of Witnesses (Deciding What to Believe).

44.      Nichols was contacted by Department Chairs who told her they had faculty positions and wanted to verify that fact with the Dean.  Nichols asked the Chairs where they got their information and they told her that they received it from the plaintiff.  (Nichols, Exhibit H, p. 41, ln. 3-6)

> <u>Response</u>:                Disagree and object to use of Nichols's testimony in support of defendant's Motion for Summary Judgment, as Nichols has an interest in not being found to have violated federal law in her treatment of Ms. Lewandowski, because if she did violate federal law in her treatment of Ms. Lewandowski, she would be liable to being disciplined up to and including being fired, and is thus an interested witness whose testimony cannot be considered in support of defendant's Motion for Summary Judgment. <u>See</u>, ¶¶10 - 12, <u>supra</u>; Joint Statement of Facts at ¶¶37, 38; <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133 at 151 (2000), 7th Circuit Pattern Jury Instruction 1.13 Testimony of

Witnesses (Deciding What to Believe).

45.     Nichols then spoke to the Department Chairs who told her that they had not solicited information from the plaintiff but had been contacted by the plaintiff.  (Nichols, Exhibit H, p. 38, ln. 20-22)

> Response:        Disagree and object to use of Nichols's testimony in support of defendant's Motion for Summary Judgment, as Nichols has an interest in not being found to have violated federal law in her treatment of Ms. Lewandowski, because if she did violate federal law in her treatment of Ms. Lewandowski, she would be liable to being disciplined up to and including being fired, and is thus an interested witness whose testimony cannot be considered in support of defendant's Motion for Summary Judgment.  See, ¶¶10 - 12, supra; Joint Statement of Facts at ¶¶37, 38; Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 at 151 (2000), 7th Circuit Pattern Jury Instruction 1.13 Testimony of Witnesses (Deciding What to Believe).

46.     To prepare for the plaintiff's FMLA absence, Nichols asked the plaintiff to meet with the staff in the office to go over anything that could come up while the plaintiff was gone.  (Nichols, Exhibit H, p. 46, ln. 7-11; Lewandowski, Exhibit B, p. 230, ln. 9-14)

> Response:        Agree that Nichols asked Ms. Lewandowski to meet with the staff.  Disagree that Nichols did so to prepare for

Ms. Lewandowski's FMLA leave, as a reasonable jury could find from the evidence that Nichols did so in preparation for firing Ms. Lewandowski. See, Additional Facts, supra, at ¶¶15 - 27, Plaintiff's Rule 56.1 Statement in Support of her Motion for Partial Summary Judgment at ¶¶17-20; Joint Statement of Facts at ¶¶31 - 36. Object to use of Nichols's testimony in support of defendant's Motion for Summary Judgment, as Nichols has an interest in not being found to have violated federal law in her treatment of Ms. Lewandowski, because if she did violate federal law in her treatment of Ms. Lewandowski, she would be liable to being disciplined up to and including being fired, and is thus an interested witness whose testimony cannot be considered in support of defendant's Motion for Summary Judgment. See, ¶¶10 - 12, supra; Joint Statement of Facts at ¶¶37, 38; Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 at 151 (2000), 7th Circuit Pattern Jury Instruction 1.13 Testimony of Witnesses (Deciding What to Believe).

47.     Nichols asked the plaintiff whether she had met with the staff and the plaintiff told her that she could not have the meeting because Allison Ratliff had been called away by James MacDonald, the Associate Dean. (Nichols, Exhibit H, p. 46, ln. 13-18)

    Response:          Agree that Ms. Lewandowski told Dean Nichols that

she was unable to meet with Allison Ratliff because Associate

Provost MacDonald occupied Ms. Ratliff's time when

Ms. Lewandowski had scheduled to meet with Ms. Ratliff.

See Deposition Transcript of Lisa Lewandowski at p. 230 line

9 through p. 231 line 15, attached as Exhibit F to this Rule

56.1(b)(3) Statement.

48.　　　　Nichols then asked MacDonald if he had called Ratliff away when she was

meeting with the plaintiff and MacDonald said that he had not done that.

(Nichols, Exhibit H, p. 46, ln. 22-25)

　　　　Response:　　　　　　　Disagree and object to use of Nichols's testimony in

support of defendant's Motion for Summary Judgment, as

Nichols has an interest in not being found to have violated

federal law in her treatment of Ms. Lewandowski, because if

she did violate federal law in her treatment of

Ms. Lewandowski, she would be liable to being disciplined

up to and including being fired, and is thus an interested

witness whose testimony cannot be considered in support of

defendant's Motion for Summary Judgment. See, ¶¶10 - 12,

supra; Joint Statement of Facts at ¶¶37, 38; Reeves v.

Sanderson Plumbing Products, Inc., 530 U.S. 133 at 151

(2000), 7th Circuit Pattern Jury Instruction 1.13 Testimony of

Witnesses (Deciding What to Believe).

49.　　　　Nichols asked the plaintiff to prepare a template for her that was the same

as the templates used by the deans of the College's other schools.  (Nichols, Exhibit H, p. 49, ln. 8-9)

> Response:           Agree.

50.          Instead of following the format Nichols asked her to follow, the plaintiff used a format that former Dean Lehrer had used.  (Lewandowski, Exhibit B, p. 221, ln. 3-14)

> Response:           Agree that Dean Nichols requested that Ms. Lewandowski adopt the templates that other deans used. Disagree that Ms. Lewandowski had not followed the format that Dean Nichols requested, as not supported by the citation.

51.          After receiving the template prepared by the plaintiff, Nichols asked the plaintiff if the template was what Nichols had asked her to prepare and the plaintiff told her that it was.  (Nichols, Exhibit H, p. 49, ln. 9-12)

> Response:           Disagree and object to use of Nichols's testimony in support of defendant's Motion for Summary Judgment, as Nichols has an interest in not being found to have violated federal law in her treatment of Ms. Lewandowski, because if she did violate federal law in her treatment of Ms. Lewandowski, she would be liable to being disciplined up to and including being fired, and is thus an interested witness whose testimony cannot be considered in support of defendant's Motion for Summary Judgment.  See, ¶¶10 - 12,

supra; Joint Statement of Facts at ¶¶37, 38; Reeves v.

Sanderson Plumbing Products, Inc., 530 U.S. 133 at 151

(2000), 7th Circuit Pattern Jury Instruction 1.13 Testimony of

Witnesses (Deciding What to Believe).

52.        Nichols believed the plaintiff lied to her when she gave her a template for

Department Chair reappointment and told her that the template was what

Nichols had requested.  (Nichols, Exhibit H, p. 49, ln. 1-18)

        Response:           Disagree and object to use of Nichols's testimony in

                support of defendant's Motion for Summary Judgment, as

                Nichols has an interest in not being found to have violated

                federal law in her treatment of Ms. Lewandowski, because if

                she did violate federal law in her treatment of

                Ms. Lewandowski, she would be liable to being disciplined

                up to and including being fired, and is thus an interested

                witness whose testimony cannot be considered in support of

                defendant's Motion for Summary Judgment.  See, ¶¶10 - 12,

                supra; Joint Statement of Facts at ¶¶37, 38; Reeves v.

                Sanderson Plumbing Products, Inc., 530 U.S. 133 at 151

                (2000), 7th Circuit Pattern Jury Instruction 1.13 Testimony of

                Witnesses (Deciding What to Believe).

53.        Nichols compared the template given to her by the plaintiff to the template

used by the other deans and found that they were completely difference.

(Nichols, Exhibit H, p. 49, ln. 22-25; p. 50, ln. 1)

Response:          Disagree and object to use of Nichols's testimony in
support of defendant's Motion for Summary Judgment, as
Nichols has an interest in not being found to have violated
federal law in her treatment of Ms. Lewandowski, because if
she did violate federal law in her treatment of
Ms. Lewandowski, she would be liable to being disciplined
up to and including being fired, and is thus an interested
witness whose testimony cannot be considered in support of
defendant's Motion for Summary Judgment.  <u>See</u>, ¶¶10 - 12,
<u>supra</u>; Joint Statement of Facts at ¶¶37, 38; <u>Reeves v.
Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133 at 151
(2000), 7th Circuit Pattern Jury Instruction 1.13 Testimony of
Witnesses (Deciding What to Believe).

54.          When Nichols questioned the plaintiff about the different templates, the
plaintiff initially could not provide an explanation and eventually acknowledged
that she had not done what she was instructed to do.  (Nichols, Exhibit H, p. 50,
ln. 2-10)

Response:          Disagree and object to use of Nichols's testimony in
support of defendant's Motion for Summary Judgment, as
Nichols has an interest in not being found to have violated
federal law in her treatment of Ms. Lewandowski, because if
she did violate federal law in her treatment of
Ms. Lewandowski, she would be liable to being disciplined

up to and including being fired, and is thus an interested witness whose testimony cannot be considered in support of defendant's Motion for Summary Judgment. <u>See</u>, ¶¶10 - 12, <u>supra</u>; Joint Statement of Facts at ¶¶37, 38; <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133 at 151 (2000), 7th Circuit Pattern Jury Instruction 1.13 Testimony of Witnesses (Deciding What to Believe).

55.      When the first met, the plaintiff told Nichols that she intended to apply for the Assistant Dean position. (Lewandowski, Exhibit B, p. 224, ln. 17-24; p. 225, ln. 1)

      <u>Response</u>:      Agree.

56.      Nichols instructed the plaintiff to have no involvement in the Assistant Dean search because she was to be a candidate. (Nichols, Exhibit H, p. 87, ln. 7-12).

      <u>Response</u>:      Disagree and object to use of Nichols's testimony in support of defendant's Motion for Summary Judgment, as Nichols has an interest in not being found to have violated federal law in her treatment of Ms. Lewandowski, because if she did violate federal law in her treatment of Ms. Lewandowski, she would be liable to being disciplined up to and including being fired, and is thus an interested witness whose testimony cannot be considered in support of defendant's Motion for Summary Judgment. <u>See</u>, ¶¶10 - 12,

supra; Joint Statement of Facts at ¶¶37, 38; <u>Reeves v.</u>

<u>Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133 at 151

(2000), 7th Circuit Pattern Jury Instruction 1.13 Testimony of

Witnesses (Deciding What to Believe).

57. The plaintiff told Nichols that Allison Ratliff had told her to order the computer that was to be given to the new Assistant Dean.  (Lewandowski, Exhibit B, p. 225, ln. 17-21; p. 226, ln. 3-6)

  <u>Response</u>:  Agree.

58. Nichols was offended that the plaintiff had inquired about setting up the new Assistant Dean's office.  (Lewandowski, Exhibit B, p. 226, ln. 16-24; p. 227, ln. 1-2)

  <u>Response</u>:  Agree that Nichols "seemed" offended to

        Ms. Lewandowski.  Disagree as to whether or not Nichols

        was actually offended, as not supported by the citation.

59. Dean Nichols was displeased with the plaintiff because she had instructed the plaintiff not to have anything to do with the search for the assistant dean. (Lewandowski, Exhibit B, p. 227, ln. 3-7)

  <u>Response</u>:  Agree.

60. Nichols is the person who decided to terminate the plaintiff.  (Nichols, Exhibit H, p. 65, ln. 13-15)

  <u>Response</u>:  Disagree.  Defendant's Director of Human Resources

        testified that Provost Kapelke and Assistant Vice President

        Griffin were also part of the decision to terminate

-34-

Ms. Lewandowski's employment.  <u>See</u>, Additional Facts, <u>supra</u>, at ¶¶21 - 24.  Object to use of Nichols's testimony in support of defendant's Motion for Summary Judgment, as Nichols has an interest in not being found to have violated federal law in her treatment of Ms. Lewandowski, because if she did violate federal law in her treatment of Ms. Lewandowski, she would be liable to being disciplined up to and including being fired, and is thus an interested witness whose testimony cannot be considered in support of defendant's Motion for Summary Judgment.  <u>See</u>, ¶¶10 - 12, <u>supra</u>; Joint Statement of Facts at ¶¶37, 38; <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133 at 151 (2000), 7th Circuit Pattern Jury Instruction 1.13 Testimony of Witnesses (Deciding What to Believe).

61.      At the time she terminated the plaintiff, Nichols told her that she did not trust her.  (Nichols, Exhibit H, p. 16, ln. 1-15)

　　　<u>Response</u>:          Agree.

62.      Nichols told the plaintiff to order for herself the computer she felt comfortable with.  (Nichols, Exhibit H, p. 84, ln. 6-10)

　　　<u>Response</u>:          Object to use of Nichols's testimony in support of defendant's Motion for Summary Judgment, as Nichols has an interest in not being found to have violated federal law in her treatment of Ms. Lewandowski, because if she did violate

-35-

federal law in her treatment of Ms. Lewandowski, she would be liable to being disciplined up to and including being fired, and is thus an interested witness whose testimony cannot be considered in support of defendant's Motion for Summary Judgment.  See, ¶¶10 - 12, supra; Joint Statement of Facts at ¶¶37, 38; Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 at 151 (2000), 7th Circuit Pattern Jury Instruction 1.13 Testimony of Witnesses (Deciding What to Believe).

63.        Nichols documented the problems she had with the plaintiff's apparent untrustworthiness and poor performance as those problems occurred.  (Nichols, Exhibit H, p. 69, ln 2-8; p. 70, ln 3-9, 15-25; p. 71, ln. 1-17; Nichols' Notes to the file re: Lisa Lewandowski, Exhibit I)

Response:                Disagree that any alleged performance problems were real rather than pretextual.  Object to use of Nichols's testimony in support of defendant's Motion for Summary Judgment, as Nichols has an interest in not being found to have violated federal law in her treatment of Ms. Lewandowski, because if she did violate federal law in her treatment of Ms. Lewandowski, she would be liable to being disciplined up to and including being fired, and is thus an interested witness whose testimony cannot be considered in support of defendant's Motion for Summary Judgment.

See, ¶¶10 - 12, <u>supra</u>; Joint Statement of Facts at ¶¶37, 38;

<u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133

at 151 (2000), 7th Circuit Pattern Jury Instruction 1.13

Testimony of Witnesses (Deciding What to Believe).

64.     Olalde generated notes during her investigation and those notes accurately reflect what occurred.  (Olalde, Exhibit D, p. 6, ln 20-25; p. 7, ln. 1-6, 21-23; p. 8, ln. 17-25; p. 9, ln 3-7; Olalde Notes, Exhibit E)

        <u>Response</u>:          Agree.

65.     In response to the plaintiff's amended complaint, Columbia filed an answer, denying all allegations of fault and an affirmative defense.  (Exhibits J, K)

        <u>Response</u>:          Agree.

Lisa Lewandowski,
plaintiff,

By:   s/David L. Lee
Her attorney

<u>Proof of service</u>:  I, David L. Lee, an attorney, certify that I served this Rule 56.1(b)(3) Statement on defendant's attorney by e-mail on July 8, 2011.

s/David L. Lee
David L. Lee

David L. Lee
ARDC #1604422
LAW OFFICES OF DAVID L. LEE
53 W. Jackson Blvd., Suite 505
Chicago, IL  60606
312-347-4400
d-lee@davidleelaw.com