**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LISA LEWANDOWSKI, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | No. 09 C 4949 |
| | ) | |
| COLUMBIA COLLEGE CHICAGO, | ) | |
|     Defendant. | ) | |

## MEMORANDUM AND ORDER

In this employment discrimination case, plaintiff Lisa Lewandowski alleges that her former supervisor at Columbia College sexually harassed her in violation of Title VII (Count I) and that Columbia College retaliated against her in violation of Title VII and the FMLA (Counts II and III, respectively) and state law (Count V) and interfered with her exercise of FMLA rights (Count IV). Ms. Lewandowski seeks summary judgment with respect to her Title VII discrimination and FMLA retaliation claims, while Columbia College has filed a cross motion for summary judgment as to all claims. For the following reasons, Ms. Lewandowski's motion for summary judgment is denied and Columbia College's motion is denied as to Count I and granted as to Counts II, III, IV, and V.

**I.**     **Background**

The following facts are drawn from the parties' Local Rule 56.1 statements and are undisputed unless otherwise noted.

    **A.**     **Ms. Lewandowski's Position as Assistant to the Dean**

In 1998, Ms. Lewandowski began working at Columbia College in Chicago, Illinois. In May of 2005, she assumed the position of Assistant to Leonard Lehrer, who was the Dean of Columbia's School of Fine and Performing Arts and Ms. Lewandowski's direct supervisor.

The job description for the position of Assistant to the Dean of Columbia's School of Fine and Performing Arts included the following responsibilities: (1) supervising graduate students; (2) serving as a liaison to the college administration, department chairs and department assistants; (3) assisting chairs and department assistants with college policies and procedures; (4) serving as a liaison to the Office of Academic Initiatives and International Programs; (5) researching and gathering information for reports and projects; (6) facilitating budget preparation and maintenance; (7) facilitating faculty evaluations with department chairs; (8) facilitating school faculty retreats and special events for the Dean's office; (9) assisting in resolving student concerns; (10) processing check requests, travel reimbursements, stipends, and grade change forms; and (11) prioritizing the Dean's weekly, monthly, and semester schedules. In addition,

the job description stated that the Assistant to the Dean served as the "point" person for the Dean's office and had major contact with members of the College's administration, the Dean, the Associate Dean, all chairs, the Office of Academic Initiatives and International Programs, individual faculty members, students, student organizations, major committees, and professional organizations.

### B. Dean Lehrer's Advances

On October 10, 2006, Dean Lehrer acted on his feelings for Ms. Lewandowski. He later admitted to Patricia Olande, Columbia College's Director of Human Resources, that on October 10th, he told Ms. Lewandowski that: (1) he had strong feelings for her that he had to act on; (2) he was attracted to her and she was his type, tall and slender; (3) he wanted to have an affair with her and that nobody would need to know and nobody would get hurt; (4) he wanted her to have his children; and (5) he wanted to wake up in her bed. In addition, he stated that he gave Ms. Lewandowski a poem about waking up in her arms (which does not appear in the record) and attempted to hug and kiss Ms. Lewandowski.

### C. Columbia's Sexual Harassment Policy and Actions

At the time of Ms. Lewandowski's employment, Columbia had a written policy prohibiting harassment based on sex or other characteristics protected by state, federal, or local law. Columbia also provided sexual harassment workshops for chairs, department heads, supervisors, and deans. The record does not indicate whether Dean Lehrer attended any of these sessions in 2006. However, it is undisputed that Columbia told its deans that they cannot retaliate against employees for asserting their rights under federal law and may suffer adverse consequences – such as verbal or written reprimands or termination – if they do so.

### D. Ms. Lewandowski's Complaint

On October 11, 2006, Ms. Lewandowski reported Dean Lehrer's conduct to Ms. Olade. She then had what she described as a social meal with Dean Lehrer, shared a cab with him to her apartment, and permitted him to enter her apartment. Ms. Lewandowski contends that she did so at Ms. Olande's suggestion so she could discuss Dean Lehrer's "overly friendly" conduct with him and resolve the situation. Columbia, however, denies that Ms. Olande encouraged her to have any contact with Dean Lehrer and characterizes the evening as an invitation to inappropriate behavior.

On October 18, 2006, at the direction of Assistant Vice President Stephanie Griffin and Provost Steven Kapelke, Ms. Olande interviewed Dean Lehrer and, as detailed above, Dean Lehrer admitted he had feelings towards Ms. Lewandowski. He also that said that he believed that Ms. Lewandowski had welcomed his advances. During her deposition, Ms. Lewandowski admitted to initiating hugs and kissing Dean Lehrer on the cheek on more than one occasion but

asserts that they were innocuous actions meant to convey sentiments such as "goodbye" or "feel better at the hospital."

Following the investigation, Columbia gave Ms. Lewandowski time off from work in October and November of 2006 so she would not need to be in the office on days when Dean Lehrer was there. Provost Kapelke also met with Dean Lehrer and issued him a letter of reprimand. Dissatisfied with this reaction, Ms. Lewandowski filed a claim of discrimination with the EEOC in December of 2006.

During discovery in this case, Provost Kapelke did not recall any details about Ms. Lewandowski's allegations of harassment, his own actions in deciding whether to discipline Dean Lehrer, or the materials he reviewed to investigate the allegations. The record shows that the College issued a written reprimand to Dean Lehrer.

### E. Ms. Lewandowski's Temporary Position

In February of 2007, Provost Kapelke offered Ms. Lewandowski a transfer from the Dean's office to the position of Assistant to Associate Provost Anne Foley. Provost Kapelke testified at his deposition that he did not recall whether he knew about Ms. Lewandowski's EEOC charge before her transfer.

Ms. Lewandowski received a job description for the new position and decided to take it. The job description for the position of Assistant to the Associate Provost included the following responsibilities: (1) scheduling events, including meetings; (2) maintaining paper and electronic files; (3) arranging for printing, binding and distribution of documents; (4) managing finance, purchasing. and personnel procedures; (5) proofreading and editing documents; (6) preparing charts, graphs, covers, flyers and formatting text; (7) composing correspondence and short reports; (8) creating and maintaining local databases such as distribution lists; (9) gathering and organizing information; and (10) hiring, scheduling and supervising student workers.

The position of Associate Provost was a position of higher authority than Dean Leher's position. In her new position as Assistant to the Associate Provost, Ms. Lewandowski worked the same hours and had the same salary and benefits that she received while working as Assistant to Dean Lehrer. Ms. Lewandowski served as Assistant to the Associate Provost for seven months. During that time, she did not work with any student assistants. Andre Foisy, another Assistant to Associate Provost Foley, assigned tasks to Ms. Lewandowski. At her deposition, Ms. Lewandowski stated that she thought that the Provost's office was a fine working environment and that she had no problems working there. However, she believed that the new position was a step down that prevented her from doing interesting and meaningful work and was displeased with the lack of direct interaction with her supervisor and the fact that she received assignments from another assistant.

### F. Ms. Lewandowski's Transfer Back to Her Former Position

In August of 2007, Ms. Lewandowski returned to the Dean's office, and resumed the position as Assistant to the new Dean, Eliza Nichols. She kept her salary and benefits. When Ms. Lewandowki began her new position, Dean Nichols met with Ms. Lewandowski to discuss her expectations and philosophy that an assistant should perform tasks as assigned but not make decisions on her behalf. In addition, Ms. Lewandowski told Dean Nichols about her desire to apply for a position as Assistant Dean. Accordingly, Dean Nichols told her to avoid any involvement in the Assistant Dean search because she intended to be a candidate.

Things did not proceed smoothly in the new position. For example, Dean Nichols told Ms. Lewandowski not to contact any department chairs and later found out that Ms. Lewandowski had done so after a few chairs spoke with the Dean about information they received from Ms. Lewandowski. Dean Nichols inquired and discovered that the chairs were contacted by Ms. Lewandowski and did not solicit information from her.

On September 25, 2007, Ms. Lewandowski requested written FMLA leave for knee surgery requiring "hospital care." Dean Nichols and Ms. Lewandowski discussed the dates and Dean Nichols approved the request for FMLA leave. To prepare for Ms. Lewandowski's FMLA leave, Dean Nichols asked Ms. Lewandowski to meet with the office staff prior to her departure. Before the FMLA leave's scheduled start, Dean Nichols asked Ms. Lewandowski if she had met with a co-worker, Allison Ratliff. Ms. Lewandowski stated that Associate Dean MacDonald had called Ms. Ratliff away during the scheduled meeting time. According to Dean Nichols, she asked Associate Dean MacDonald if he had called Ms. Ratliff away and he denied doing so.

In addition, Dean Nichols asked Ms. Lewandowki to prepare a template to be used to evaluate department chairs like the one used by the deans of the College's other schools. According to Dean Nichols, Ms. Lewandowski gave her a template in the format preferred by Dean Lehrer that was not like the ones generally used by other deans. When Dean Nichols questioned Ms. Lewandowski about the template, she acknowledged that she had not followed Dean Nichols' directions. Dean Nichols was also displeased with Ms. Lewandowski after she ordered a computer for the new Assistant Dean, as she had instructed Ms. Lewandowski to avoid any involvement with that position since Ms. Lewandowski intended to apply.

During Ms. Lewandowski's first month of employment under Dean Nichols, Dean Nichols began to keep a log documenting her concerns about Ms. Lewandowski's performance because she "felt she had a reason" to do so. She does not generally keep logs on employee conduct. She included the incidents listed above in the log.

Events came to a head on October 17, 2007, the day before Ms. Lewandowski's FMLA leave was to commence. Saying that she could not trust Ms. Lewandowski, Dean Nichols fired her. Ms. Lewandowski does not know if Dean Nichols was aware of the complaint against Dean Lehrer. However, Provost Kapelke, who was directly involved in the investigation of the

allegations and issued a written reprimand to Dean Lehrer, and Assistant Vice President Stephanie Griffin took part in the decision to terminate Ms. Lewandowski. Ms. Lewandowski does not point to any evidence showing that Provost Kapelke knew about the EEOC charge. However, Ms. Lewandowski asserts in her declaration that Ms. Griffin "knew why [Ms. Lewandowski" was being transferred to [Associate Provost Foley's] office. Dkt. 81-1, Page ID#569.

## II. Discussion

### A. Standard for a Motion for Summary Judgment

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Valenti v. Qualex, Inc.*, 970 F.2d 363, 365 (7th Cir. 1992). A court should grant a motion for summary judgment only when the record shows that a reasonable jury could not find for the nonmoving party. *Id*.

Determining which facts are "material" in employment discrimination cases depends upon the substantive law of employment discrimination, and the applicable burden of proof. *Williams v. Williams Electronics, Inc.*, 856 F.2d 920, 922 (7th Cir. 1988). When considering motions for summary judgment in discrimination cases, the court applies these standards with added rigor because the matters of intent and credibility are crucial issues. *Sarsha v. Sears, Roebuck, & Co.*, 3 F.3d 1035, 1038 (7th Cir. 1993).

### B. Discussion

Ms. Lewandowski contends that Dean Lehrer sexually harassed her in violation of Title VII (Count I) and that Columbia College retaliated against her in violation of federal law (Counts II and III) and state law (Count V) and interfered with her exercise of FMLA rights (Count IV). Ms. Lewandowski seeks summary judgment with respect to her Title VII and FMLA retaliation claims. In turn, Columbia College has filed a cross motion for summary judgment as to all of Ms. Lewandowski's claims.

#### 1. Sexual Harassment – Title VII (Count I)

Title VII prohibits an employer from discriminating against an employee "with respect to [her] compensation, terms, conditions, or privileges of employment because of such individual's . . . sex." 42 U.S.C. § 2000e–2(a)(1). Both sides contend that they are entitled to summary judgment on Ms. Lewandowski's Title VII harassment claim. Ms. Lewandowski asserts that Dean Lehrer's actions clearly violated Title VII and that Columbia College is liable. In contrast, Columbia College asserts the affirmative defense established in *Burlington Industries, Inc. v.*

*Ellerth*, 524 U.S. 742 (1998), and *Faragher v. Boca Raton*, 524 U.S. 775 (1998), arguing that the record shows that it exercised reasonable care to promptly address the fallout of Dean Lehrer's advances and that Ms. Lewandowski, in any event, put herself in harms way by handling the situation improperly and welcoming the advances.

### a. Prima Facie Case

Although the Title VII count of Ms. Lewandowski's amended complaint refers generally to "sexual harassment," she appears to be claiming that Dean Lehrer's conduct created a hostile work environment in violation of Title VII. *See* Dkt. 7, Page ID#55. To set forth a prima facie case for this claim, a plaintiff must show that: (1) she was subjected to unwelcome conduct of a sexual nature; (2) the conduct was directed at her because of her sex; (3) the conduct was severe or pervasive enough to create a hostile work environment; and (4) there is a basis for employer liability. *See, e.g., Roby v. CWI*, Inc., 579 F.3d 779, 784 (7th Cir. 2009). Ms. Lewandowski's motion for summary judgment falters on the first prong since the parties vigorously dispute whether Ms. Lewandowski was romantically interested in her now-former boss and the record contains evidence supporting the position taken by each side. For example, were the hugs and kisses initiated by Ms. Lewandowski platonic or something more? Did Ms. Lewandowski dine with Dean Lehrer after complaining about his request to "have an affair" to resolve the situation with him directly or because her complaint was insincere? These issues must be determined at trial. Thus, Ms. Lewandowski cannot set forth a prima facie case of sexual harassment under Title VII so her motion for summary judgment as to Count I must be denied.

### b. Columbia College's Affirmative Defense

In the interests of efficiency, the court will nevertheless assume that Ms. Lewandowski could establish a prima facie case and consider Columbia College's contention that it has a valid affirmative defense to employer liability. "An employer is subject to vicarious liability to a victimized employee for an actionable hostile work environment created by a supervisor with immediate (or successively higher) authority over the employee." *Johnson v. West*, 218 F.3d 725, 730 (7th Cir. 2000), *citing Burlington Industries, Inc. v. Ellerth*, 524 U.S. at 766; *Faragher v. City of Boca Raton*, 524 U.S. at 807. If a supervisor's harassment results in "a tangible employment action, such as discharge, demotion, or undesirable reassignment, . . . the employer's vicarious liability is strict, in the sense that no defense is available once the other elements of the case have been proven." *Jackson v. County of Racine*, 474 F.3d 493, 500-01 (7th Cir. 2007) (internal citations and quotations omitted). However, if there is no tangible employment action, an employer may avoid vicarious liability by showing "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Johnson v. West*, 218 F.3d at 730 (internal citations and quotations omitted).

To prevail on its motion for summary judgment, Columbia College must thus first establish that Ms. Lewandowski's interim assignment as Assistant to Anne Foley, the Associate Provost, did not constitute an adverse employment action.[1] It must also show that it exercised reasonable care to prevent and promptly correct sexually harassing behavior and that Ms. Lewandowski either unreasonably failed to take advantage of any preventive or corrective opportunities it provided or put herself in harms way.

### i. Adverse Employment Action

The court first considers whether the interim assignment rises to the level of an adverse employment action. An adverse action occurs when an employee is fired or demoted, suffers a decrease in benefits or pay, or is given a significantly lesser job. *Hill v. American General Finance, Inc.*, 218 F.3d 639, 644 (7th Cir. 2000); *Crady v. Liberty National Bank & Trust Co. of Indiana*, 993 F.2d 132, 136 (7th Cir. 1993) (an adverse employment action is one that materially affects the terms and conditions of employment). However, not every unwelcome employment action qualifies as an adverse action as negative reviews, a change in job title, an increased distance to travel to work, or a lateral transfer do not, by themselves, qualify. *See Burlington Industries v. Ellerth*, 524 U.S. at 761 ( "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits"); *see also Crady v. Liberty Nat'l Bank & Trust Co. of Indiana*, 993 F.2d at 136 (a materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation).

The Seventh Circuit has recognized three categories of materially adverse employment actions: those affecting "(1) the employee's current wealth such as compensation, fringe benefits, and financial terms of employment including termination; (2) the employee's career prospects thus impacting the employee's future wealth; and (3) changes to the employee's work conditions including subjecting her to 'humiliating, degrading, unsafe, unhealthy, or otherwise significant

---

[1] It is true that Ms. Lewandowski was fired. This is an adverse employment action, but in connection with her claim of harassment under Title VII, Ms. Lewandowski focuses exclusively on whether the position with Assistant Provost Foley was an adverse employment action, even though subjecting an employee to a hostile work environment is a form of an adverse employment action. *See Hildebrandt v. Ill. Dep't of Nat. Resources*, 347 F.3d 1014 (7th Cir. 2003) (hostile work environment claim under Title VII). Ms. Lewandowski's hostile work environment claim survives the motion for summary judgment but can only be conclusively determined at trial. In the interests of addressing as many arguments as possible given the case's present posture, the court will consider Ms. Lewandowski's adverse employment action argument as she has framed it and thus will only compare her position with Dean Lehrer to the temporary position with Associate Provost Anne Foley.

negative alteration in [her] work place environment.'" *Lewis v. City of Chicago*, 496 F.3d 645, 653 (7th Cir. 2007), *citing Herrnreiter v. Chicago Housing Authority*, 315 F.3d 742, 744-45 (7th Cir. 2002). Ms. Lewandowski's claims potentially fall into the second and third categories, as she asserts that while her pay and benefits remained the same, both jobs following her rebuff of Dean Lehrer were major steps down and that she frequently lacked sufficient work or was given busywork. Columbia College, on the other hand, asserts that both positions required administrative work and were essentially the same.

The court finds that the administrative support positions both place Ms. Lewandowski in the same position vis-a-vis her future career prospects as they do not involve materially different job responsibilities or otherwise materially differ. In addition, an action that merely "displeases the employee" is not actionable. *Herrnreiter v. Chicago Housing Authority*, 315 F.3d 742, 744 (7th Cir. 2002). Ms. Lewandowski's belief that the position with Associate Provost Anne Foley was a step down that prevented her from doing what she perceived as interesting and meaningful work and her desire to receive assignments directly from her supervisor instead of from another assistant do not rise to the level of significantly diminished material responsibilities. The positions are admittedly not precisely the same, but they are substantially similar and require the same general skill set and aptitude. Thus, the temporary position did not create a significant negative alteration in the workplace environment.

It is also important to note that Ms. Lewandowski's position with Associate Provost Foley was temporary, and she landed there because Columbia College accommodated Ms. Lewandowski's desire to be separated from Dean Lehrer following his unsuccessful attempt to have an affair. When her original position became open, Columbia College moved her back. While Dean Nichols had a different philosophy about the role of an assistant and monitored and directed her work differently than Dean Lehrer, there can be no dispute that the job description for the position of Assistant to the Dean remained the same. Accordingly, Ms. Lewandowski's placement with Associate Provost Foley is not an adverse employment action. This means that Columbia College may attempt to show that it is entitled to a *Ellerth/Faragher* affirmative defense.

### ii. Columbia College's *Ellerth/Faragher* Affirmative Defense

Ms. Lewandowki's main argument in opposition to Columbia College's invocation of an *Ellerth/Faragher* affirmative defense is that Dean Lehrer's actions violate Title VII and subsequent actions taken by Columbia College do not erase that harassment. Unfortunately, this position is at odds with *Ellerth* and its progeny, which allow an employer to avoid vicarious liability for harassment by a supervisor by showing that it exercised reasonable care to prevent and correct promptly any sexually harassing behavior and that the employee unreasonably failed to take advantage of the corrective opportunities or to otherwise avoid harm.

"An employer's response to alleged instances of employee harassment must be reasonably calculated to prevent further harassment under the particular facts and circumstances of the case at the time the allegations are made." *McKenzie v. Ill. Dep't of Transp.*, 92 F.3d 473, 480 (7th Cir. 1996); *see also Williams v. Waste Mgmt. of Ill.*, 361 F.3d 1021, 1029 (7th Cir. 2004) ("the employer can avoid liability for its employees' harassment if it takes prompt and appropriate corrective action reasonably likely to prevent the harassment from recurring"). Prompt investigation of the alleged misconduct is a hallmark of reasonable corrective action. *See, e.g., Savino v. C.P. Hall Co.*, 199 F.3d 925, 933 (7th Cir. 1999) (finding that the employer "reasonably attempted to correct and prevent sexual harassment" when it "promptly investigated [the employee's] charges and sought to remedy the problem").

Columbia College contends that it acted promptly and reasonably once it learned that Dean Lehrer had invited Ms. Lewandowski to "have an affair." Specifically, after Ms. Lewandowski complained, Columbia College interviewed Dean Lehrer and recommended to Ms. Lewandowski that she avoid being in the office when he was present. The court does not condone the workplace entanglement that occurred at Columbia College, but nevertheless finds that this reaction was prompt, appropriate, and reasonably likely to prevent the harassment from recurring.

This conclusion is not altered by Ms. Lewandowski's argument that Columbia College's investigation cannot make her "unsuffer" Dean Lehrer's prior sexual advances. Dkt. 80 at Page ID#554. As discussed above, Columbia College is entitled to raise the *Ellerth/Faragher* defense and is not subject to strict liability for Dean Lehrer's overtures.

Ms. Lewandowski's contention that Columbia College's actions following her report of improper conduct were insufficient because the written reprimand it issued to Dean Lehrer was inadequate is similarly unavailing. The court's focus is on whether Columbia College's reaction was prompt, appropriate, and reasonably likely to prevent the harassment from recurring, as it does not "sit as a super-personnel department." *See Ransom v. CSC Consulting, Inc.*, 217 F.3d 467, 471 (7th Cir. 2000). Columbia College investigated and ensured that Ms. Lewandowski had no further workplace contact with Dean Lehrer. This is sufficient under the circumstances. *See Wyninger v. New Venture Gear, Inc.,* 361 F.3d 965, 977-78 (7th Cir. 2004). Ms. Lewandowski is also not entitled to force Columbia College to impose discipline that she deems adequate. In sum, the written reprimand argument is a red herring and has no bearing on whether Columbia College is entitled to raise an *Ellerth/Faragher* defense. Columbia College has thus satisfied the first prong of the *Ellerth/Faragher* defense.

The second prong turns on whether Ms. Lewandowski failed to take advantage of remedial measures provided to her or otherwise placed herself in harm's way. The parties agree that Ms. Lewandowski promptly complained but dispute the meaning of hugs and kisses that occurred prior to the complaint and whether Ms. Lewandowski's post complaint dinner with Dean Lehrer, which included a shared cab ride and Dean Lehrer's entry into Ms. Lewandowski's

apartment afterwards, demonstrates that she welcomed the advances and intentionally placed herself in a position where she would be the subject of requests for an intimate relationship.

Ms. Lewandowski characterizes the hugs and kisses as innocuous and platonic and asserts that Columbia College encouraged her to go out to dinner with Dean Lehrer. Columbia College, unsurprisingly, shades the hugs and kisses differently and stresses that Patricia Olande (its Director of Human Resources) merely told Ms. Lewandowski to tell Dean Lehrer that his conduct was unacceptable and never told her to go to dinner, share a cab, or allow him into her apartment. The court declines to act as a fact-finder at this stage in the proceedings. A jury will have to determine whether Columbia College can meet the second prong of the *Ellerth/Faragher* defense. Accordingly, Columbia College's motion for summary judgment on Ms. Lewandowski's Title VII claim is denied.

### 2. Title VII Retaliation (Count II)

To avoid summary judgment on a retaliation claim, a plaintiff must produce evidence from which a jury could conclude: "(1) that she engaged in a statutorily protected activity; (2) that she suffered a materially adverse action by her employer; and (3) there was a causal link between the two." *Silverman v. Bd. of Educ. of City of Chicago*, 637 F.3d 729, 740 (7th Cir. 2011). Ms. Lewandowski has satisfied the first element as filing charges with the EEOC and pursuing a lawsuit in an attempt to vindicate those charges are "the most obvious form[s] of statutorily protected activity." *Id*.

The parties dispute whether Ms. Lewandowski suffered an adverse employment action and whether there is a causal link between that action and her filing with the EEOC. With respect to the adverse employment action and causation prongs, Columbia College contends that Ms. Lewandowski's termination is completely separated from her EEOC charge. Ms. Lewandowski, on the other hand, asserts that Dean Nichol's dissatisfaction with her performance and her subsequent termination flowed from Columbia College's desire to retaliate against her for filing the EEOC charge.

Ms. Lewandowski's termination unquestionably is an adverse employment action. Ther third prong – causation – is thus determinative. Dean Nichols did not know about the EEOC action when she decided to terminate Ms. Lewandowski. Columbia College heavily stresses this fact, arguing that a person who did not know about protected conduct cannot retaliate based on the protected conduct. Provost Kapelke, who was directly involved in the investigation of the allegations and issued a written reprimand to Dean Lehrer, and Assistant Vice President Stephanie Griffin also took part in the decision to terminate Ms. Lewandowski. Dkt. 88, PageID#1099 at ¶22. Ms. Lewandowski does not point to evidence indicating that Provost Kapelke knew about the EEOC charge.

Ms. Lewandowski, however, generally asserts that Ms. Griffin "knew why [Ms. Lewandowski" was being transferred to [Associate Provost Foley's] office. Dkt. 81-1, Page

-10-

ID#569. This allegation is fatally vague. To withstand summary judgment, Ms. Lewandowski must point to admissible evidence showing that there is a genuine issue of disputed material fact. With respect to Ms. Griffin, Ms. Lewandowski must thus point to evidence suggesting that Ms. Griffin knew about Ms. Lewandowski's EEOC charge. Ms. Lewandowski's phrasing dodges this issue. Does it mean that Ms. Griffin knew about the EEOC charge or does it, instead, mean that she knew about Dean Lehrer's conduct? To answer this question, the court would have to indulge in speculation. Because Ms. Lewandowski has the burden of establishing the elements of her claim for retaliation and has not identified evidence showing that any decision-makers knew about the EEOC charge, any claim that her termination was caused by the filing of the charge must fail. *See Lucie v. Amaurotic Corp.*, 389 F.3d 708, 715 (7th Cir. 2004) ("The key inquiry in determining whether there is a causal connection under the direct method is whether [Plaintiff's supervisor] was aware of [her protected activity] at the time of [her] decisions to" take adverse action against the plaintiff; as "absent such knowledge, there can be no causal link between the two"). Accordingly, Columbia College's motion for summary judgment as to the Title VII retaliation claim is granted.

### 3. FMLA Retaliation (Count III) & Interference (Count IV)

Under the FMLA, it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided." 29 U.S.C. § 2615(a)(1). "A claim under the FMLA for wrongful termination can be brought under either a discrimination/ retaliation or interference/entitlement theory; the difference is that the first type of claim requires proof of discriminatory or retaliatory intent while the latter requires only proof that the employer denied the employee his or her entitlements under the Act." *Kauffman v. Federal Exp. Corp.*, 426 F.3d 880, 884 (7th Cir. 2005) (citation omitted).

#### a. Standard for FMLA & Interference Claims

The court "evaluate[s] a claim of FMLA retaliation the same way that [it] would evaluate a claim of retaliation under other employment statutes" so the plaintiff may proceed under either the indirect or direct methods of proof." *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004). To avoid summary judgment on her retaliation claim under the direct method, Ms. Lewandowski must point to evidence showing that she engaged in protected activity, suffered an adverse employment action, and that the protected activity and the adverse employment action were causally linked. *See, e.g., Silverman v. Bd. of Educ. of City of Chicago*, 637 F.3d 729, 740 (7th Cir. 2011). Alternatively, under the indirect burden-shifting method, she must show that she engaged in statutorily protected activity, performed her job satisfactorily, suffered an adverse employment action, and was treated less favorably than other similarly situated employees who did not engage in protected activity. *See, e.g., Dear v. Shinseki*, 578 F.3d 605, 609 (7th Cir. 2009). Ms. Lewandowski appears to be attempting to proceed under the direct method, as she argues that her termination is suspiciously close to her request for FMLA leave and the date that the leave was scheduled to commence.

To prevail on her FMLA interference claim, Ms. Lewandowski must show that: (1) she was eligible for FMLA protection; (2) Columbia College was covered by the FMLA; (3) she was entitled to FMLA leave; (4) she provided sufficient notice of her intent to take leave; and (5) Columbia College denied her benefits to which she was entitled. *See e.g., Ryl-Kuchar v. Care Centers, Inc.*, 565 F.3d 1027, 1030 (7th Cir. 2009). "When an employee alleges that the employer interfered with her substantive rights under the FMLA, we require her to "establish[ ], by a preponderance of the evidence, that [s]he is entitled to the benefit [s]he claims." *Kohls v. Beverly Enterprises Wisconsin, Inc.*, 259 F.3d 799, 804-05 (7th Cir. 2001), *quoting Diaz v. Fort Wayne Foundry Corp.*, 131 F.3d 711, 713 (7th Cir. 1997). "The employer may then present evidence to show that the employee would not have been entitled to her position even if she had not taken leave." *Id.*, *citing O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1354 (11th Cir. 2000) ("the employer has an opportunity to demonstrate that it would have discharged the employee even if she had not been on FMLA leave").

Both the indirect method of proving discrimination that is applicable to Ms. Lewandowski's FMLA retaliation claim and the standard used to evaluate her FMLA interference claim require Ms. Lewandowski to show that she was performing her job satisfactorily and was thus entitled to FMLA benefits. *See Lewis v. School Dist. #70*, 523 F.3d 730, 774 (7th Cir. 2008) (considering employee's performance when analyzing an FLMA claim using the direct method); *Boring v. World Gym-Bishop, Inc.*, No. 06 C 3260, 2008 WL 410638, *11 (N.D. Ill. Feb. 13, 2008) (same); *see also Hasan v. Foley & Lardner LLP*, 552 F.3d 520, 526 (7th Cir. 2008) (for Title VII discrimination claim, the employee's performance is relevant under both the direct and indirect methods).

### b. Ms. Lewandowski's FMLA Claims

Ms. Lewandowski does not address whether she was meeting her employer's legitimate expectations by performing her job responsibilities adequately. Instead, she claims that the proffered reason for her termination – Dean Nichols' lack of trust in her – is inherently suspect because it is subjective and thus inherently suspicious. She also stresses that the amount of time between her request for leave, her termination, and the scheduled date of her leave is suspicious. Thus, she concludes that she was terminated because she complained about discrimination (Count III, FMLA discrimination) and to prevent her from taking FMLA leave (Count IV, FMLA interference). In response, Columbia College recites the litany of complaints that Dean Nichols expressed about Ms. Lewandowski's performance and asserts that these problems led to Ms. Lewandowski's termination which, in turn, coincidentally led to her inability to take FMLA leave.

"A subjective reason for termination is certainly not necessarily a cover-up for a discriminatory termination, but it does make it more difficult to determine if Plaintiff was meeting Defendants' legitimate job expectations." *Hancock v. St. Joseph County*, No. 3:09-CV-343, 2011 WL 2671107, at *9 (N.D. Ind. Jul. 6, 2011); *see also Namenwirth v. Board of Regents of Univ. Of Wisconsin Sys.*, 769 F.2d 1235, 1243 (7th Cir. 1985) (holding in a tenure

case dealing with judgments about academic potential that subjective assessments "should not be permitted to camouflage discrimination"). Ultimately, however, the employee carries the burden of "demonstrating her right to the entitlement," which means she must show that she would not have been discharged had she not requested FMLA leave. *Kohls v. Beverly Enterprises Wisconsin, Inc.*, 259 F.3d 799, 804-05; *see also Daugherty v. Wabash Ctr., Inc.*, 577 F.3d 747, 750 (7th Cir. 2009)("To show a violation of FMLA rights, plaintiffs must show that they are eligible for FMLA protection").

Ms. Lewandowski does not engage with this issue as she does not point to any evidence showing that she was meeting her employer's legitimate expectations during her tenure with Dean Nichols. Ms. Lewandowski's personal, subjective beliefs about the reasons for her termination are not sufficient to establish pretext. *See, e.g., Vukadinovich v. Board of School Trustees of North Newton School Corp.*, 278 F.3d 693, 700 (7th Cir. 2002). Moreover, her "subjective belief that the action was retaliatory and that the claimed reasons were pretext does not alone create a genuine issue of material fact." *Johnson v. Univ. of Wisconsin-Eau Claire*, 70 F.3d 469, 480 (7th Cir. 1995).

Moreover, Ms. Lewandowski's emphasis on the timing of her termination is insufficient to survive summary judgment as "[e]vidence of temporal proximity, . . . standing on its own, is insufficient to establish a causal connection for a claim of retaliation." *Mobley v. Allstate Insurance Co.*, 531 F.3d 539, 549 (7th Cir. 2008); *see also Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 633-34 (7th Cir. 2009) (a lapse of several weeks between taking FMLA leave and discharge did not establish a causal connection when the employer discovered the employee's deficient work while he was on leave).

In sum, to survive summary judgment on her FMLA retaliation claim, Ms. Lewandowski must do more than merely criticize Columbia College's proffered reason for terminating her and speculate that the timing of her termination is suspicious and thus meant to prevent her from taking FMLA leave. As she has failed to carry her burden on her FMLA claims, her motion for summary judgment on Count III is denied and Columbia College's cross-motion as to Count III and Count IV is granted.

### 4. Common Law Retaliation (Count V)

In Count V of her complaint, Ms. Lewandowski contends that she was discharged to retaliate against her for engaging in activity protected by Title VII and the FMLA. Ms. Lewandowski does not respond to this argument so her "claim is waived or forfeited (depending on whether the decision to omit [a response] was intentional)." *Kohlman v. Village of Midlothian*, No. 08 C 5300, — F.Supp.2d —, 2011 WL 2600435, at *14 n.10 (N.D. Ill. Jun. 28, 2011). In any event, any state law claim of retaliatory discharge based on Title VII would be preempted by the Illinois Human Rights Act. *See, e.g., Marron v. Eby-Brown Co., LLC*, No. 11 C 2584, 2012 WL 182234, at *3 (N.D. Ill. Jan. 23, 2012). Similarly, "a plaintiff cannot assert a state law retaliatory discharge claim based on the rights set forth in the FMLA." *Morthland v.*

*BRP US, Inc.*, No. 06-CV-01038 DRH, 2007 WL 853986, at *2 n.4 (S.D. Ill. Mar. 16, 2007) (collecting cases). Accordingly, Columbia College's motion for summary judgment as to Count V is granted.

### III. Conclusion

For the above reasons, Ms. Lewandowski's motion for summary judgment as to Count I (Title VII discrimination) and Count III( FMLA retaliation) [79] is denied and Columbia College's motion for summary judgment [85] is denied as to Count I (Title VII discrimination) and granted as to Counts II (Title VII retaliation), III (FMLA retaliation), IV (FMLA interference), and V (common law retaliation). This case is set for status on March 20, 2012 at 11:00 AM., at which time the parties shall be prepared to agree to a firm trial date.

DATE: February 28, 2012

Blanche M. Manning
United States Judge